Daniel, J.
The first question which we have to decide, is that raised and disputed in the several bills and answers, as to the effect of Tichenor’s discharge and certificate as a bankrupt. On the part of the appellees, it is charged that Tichenor “ was guilty of fraud and willful concealment of his property and rights of property,” in several particulars specified in the bills; and they insist that his discharge and certificate consequently present no bar to the recovery which they seek. Whilst he, denying all fraud and concealment, relies on the said discharge and certificate as a complete bar, and insists that though it should be made to appear that the allegations of fraud and concealment were true, there would still be no ground laid for the jurisdiction of the Circuit court.
The fourth section of the bankrupt act of 1841 declares, that “ every bankrupt who shall bona fide surrender all his property and rights of property, &c. shall be entitled to a full discharge from all his debts, to be decreed and allowed by the court which has declared him a bankrupt, and a certificate thereof granted to him accordingly, upon his petition filed for that purpose. Such certificate not, however, to be granted until after ninety days from the decree of bankruptcy,-nor until after seventy days’ notice in some public newspaper designated by such court, to all creditors who have proved their debts, and other persons in interest, to appear at a particular time and place, to show cause why such discharge and certificate shall not be granted; at which time and place any such creditors or other persons in interest may appear and contest the right of the bankrupt thereto. Provided, that in all cases where the residence of the creditor is known, a service on him personally, or by letter addressed to him at his known usual place of residence, shall be prescribed by the court, as in their discretion shall seem proper, having regard to the dis *31 tance at which the creditor resides from such court. And if any such bankrupt shall be guilty of any fraud or willful concealment of his property or rights of property, or shall have preferred any of his creditors . contrary to the provisions of this act, or shall willfully omit or refuse to comply with any order or direction, of such court, or to conform to any other requisition of this act, or shall, in the proceedings under this act, admit a false or fictitious debt against his estate, he shall not be entitled to any such discharge or certificate.” If the section stopped here, there would, I think, appear strong ground for maintaining that it was the intention of the act to make the decree allowing the discharge binding, not only on the creditors who might prove their debts, but on all other persons in interest, who had an opportunity of contesting it, and conclusive as well in respect to questions of fraud or willful concealment of his property by the bankrupt, as in relation to any of the other matters which the act allows to be urged as causes for refusing the discharge. It is difficult to conceive on what principle a creditor who had proved his debt, and who had unsuccessfully contested the right of the bankrupt to a discharge, on the ground of his refusal to comply with “ some order or direction of the court,” could be heard to dispute the validity of the discharge on the same ground in another forum. And I do not perceive how a creditor, who is served with notice of the proceedings, but declines to make any objection, stands on higher ground in this regard. And if this be so, there is, in this portion of the section, nothing which reserves to amj of the creditors a right to impeach the discharge, after it is obtained, for “fraud or willful concealment.” All the creditors are allowed to contest the right of the bankrupt to a discharge ; and all the conditions to be complied with on his part, before his right to the decree is perfected, are placed in the *32 same category; the creditors have the same right to show his failure to perform any one of these conditions as they have to show his failure to perform any other of them. His right to have a decree might be defeated by showing a willful refusal on his part to comply with “ the orders of the court,” as effectually as by proving a “ willful concealment of his property.” And when the bankrupt shows that he has made a bona fide surrender of all his property, and otherwise obeyed all the other requisitions of the act, this portion of the section declares him to be entitled to a full discharge from all his debts. If, therefore, the act said nothing further in relation to the discharge, the jurisdiction of the court being conceded, the conclusiveness of the decree, on all the creditors who might have resisted its allowance, and in respect to all prerequisites, (including absence of fraud on the part of the bankrupt,) would seem, on general principles, to follow as a legitimate consequence. But the section, a part of which we have already quoted, does not stop herd. It proceeds, in terms, to declare what shall be the legal effect of the discharge and certificate, and in doing so, presents an entirely different view of the influence of fraud or willful concealment by the bankrupt, on their conclusiveness. It declares, that “ such discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, which are provable under this act, and shall be and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever; and the same shall be conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud or willful concealment by him of his property or rights of property as aforesaid, contrary to the provisions of this act, on prior reasonable notice, specifying in writing such fraud or concealment.”
*33 This clause of the section, it is perceived, is wholly silent as to all the matters mentioned as prerequisite to the discharge, except the bona fides of the conduct of the bankrupt. The discharge is declared liable to impeachment for his “ fraud or willful concealment,” but for nothing else. To that extent, and to that extent only, a conclusive character is denied to the discharge; but is it not denied,to that extent fully and in all regards ? What is there in the terms employed which would exclude any creditor from the benefit of this proviso ? I can perceive none. And I can conceive of no process of reasoning, founded on this section of the act, which would place a creditor in the predicament to be bound by the discharge in other respects, that would not at the same time show him entitled to impeach the discharge for fraud. If the design to debar any of the creditors of the bankrupt of this right is to be found in the act, reference must be had to some other section for its disclosure. I have been unable to discover any language in the act, which, by fair interpretation, can be regarded as having such an aspect, unless perhaps it may be found in one of the clauses in the proviso to the 5th section. That section, after declaring that all creditors, who shall come in and prove their debts in the manner prescribed by the act, shall be entitled to share in the bankrupt’s property and effects, provides, among other things, “ that no creditor or other person, coming in and proving his debt or other claim, shall be allowed to maintain any suit at law or in equity therefor, but shall thereby be deemed to have waived all right of action and suit against such bankrupt.” Whether this clause is to be construed into an inhibition on any of the creditors to open the discharge for fraud, is a question which it is obviously unnecessary for us to decide. Such inhibition can, by the terms of the clause, reach only those creditors who come in and *34 prove their debts; and, as appears by the report of the commissioner in bankruptcy, none of the appellees (indeed none of Tichenor’s creditors) proved or appeared to prove their debts.
The same clause of the fourth section, -which declares the effect of the discharge, ascertains clearly, as I conceive, the tribunals or “ courts” in which the impeachment of the discharge for fraud may be had. Jurisdiction over the matter is, by obvious implication, conferred on every court in which a suit may, independent of the act, be properly brought against the bankrupt. In the language of the court in the case of Mabry, Giller & Walker v. Herndon, 8 Alab. R. 857, “ I cannot understand, by the terms ‘ all courts of justice,’ and ‘ any court of judicature whatever,’ that none other than the federal courts are competent to entertain an objection to the validity of the discharge and certificate of a bankrupt. In employing words of most extensive application and import, when every thing said was, or at least should have been, well considered, it cannot be contended that congress designed to convey a meaning much more limited than is expressed. The fair and natural inference is, that as the discharge and certificate, when duly granted, were effectual in all .judicial tribunals in which they should be drawn in question, so they should be invalid in every court in which the bankrupt was sued and relied on them as a bar, if impeachable for any of the causes for which they are declared to be inoperative. If competent for congress to have withheld from the state courts the right to examine the validity of a bankrupt’s discharge for extrinsic objections, it is enough to say that this has not only not been done, but that the power has been conferred in terms of unequivocal signification.”
These views are fully sustained by numerous decisions of the supreme courts of other states, and are *35 not in conflict with, any decision of the Supreme court of the United States which I have seen. Bond & Bennett v. Baldwin, 9 Greorgia R. 9; Beekman v. Wilson, 9 Metc. R. 434; Gupton v. Connor &c. 11 Humph. R. 287; Humphreys v. Swett, 31 Maine R. 192; Wales v. Lyon, 2 Mich. R. 276; Dorimus, Suidam & Co. v. Walker, 8 Alab. R. 194.
It seems to me, therefore, that it was competent for the appellees to impeach Tichenor’s discharge and certificate on the grounds of fraud alleged in the bills, and that the Circuit court had jurisdiction over the question of its validity.
And I do not perceive how the decree in bankruptcy operated as any bar to the jurisdiction which the Circuit court would otherwise have had to hear and determine the matters of controversy, litigated in the cause, in respect to the property conveyed by the several deeds in the bills and proceedings mentioned. It is true that all the property and rights of property of Tichenor were, upon his obtaining the decree declaring him a bankrupt, vested in his assignee in bankruptcy. And it may be conceded that there was a period during which it was competent for the assignee to have instituted suits for the purpose of recovering from any alienee or assignee of Tichenor, property or evidences of debt held by them in virtue of conveyances or assignments made by him, in fraud of his creditors, previously to his being declared a bankrupt; and that during such period such alienees and assignees might have relied on the outstanding-title of the assignee in bankruptcy as a defense to suits instituted for a like purpose by creditors of Tichenor seeking to recover in derogation of such title. But that period had passed long before the institution of this suit, the right of the assignee to institute suits for the purpose of recovering the property of the bankrupt, from the adverse holders of it, *36 being, by the 8th section of the bankrupt act, limited to two years after the decree of bankruptcy, or after the cause of suit shall first have accrued. During that period no suit was instituted by him to recover the property in controversy; nor indeed did any exigency arise making it necessary for him, in the performance of the duties of his trust, to institute such suit, as none of the creditors came in to prove their debts; no occasion presented itself calling for the prosecution of the rights of action with which he was temporarily clothed, and they were suffered to expire under the limitation imposed by the law which conferred them.
. The creditors who are seeking to subject the property of Tichenor to the payment of their demands, claim nothing by virtue of his assignment in bankruptcy. They do not invoke the aid of the bankrupt law, nor do they seek to interfere with any right of the assignee under it. The appellees, Ellet and the Bank of Virginia, are seeking to enforce liens which had been'acquired by them under the laws of the state before Tichenor was declared á bankrupt. Such liens, so far from being invalidated by the act, are expressly recognized in the proviso of the second section; and it is now well settled that the jurisdiction of the federal courts to enforce such liens, is not in exclusion of a like jurisdiction in the state courts. Russell v. Cheatham, 8 Smeades & Marsh. 703; Talbert v. Melton, 9 Id. 9; McCance v. Taylor, 10 Gratt. 580. The jurisdiction of the Circuit court to extend to the appellees Allen, Mosby’s administrator and Clough’s administrator, the aid sought by them in their several bills, in subjecting Tichenor’s property to their demands, is, I think, equally clear, and equally free from the objection of involving an encroachment on the rights of the assignee in bankruptcy, or any claiming under him. The claim of Mosby’s administrator is founded on a *37 judgment obtained against Tichenor in 1842, since the decree in bankruptcy; and upon showing that Tichenor’s discharge was procured by fraud, the right of Allen and of Clough’s administrator to obtain judgments against him upon their debts, would stand on the same footing as if he had never been declared a bankrupt; and for all the purposes of the jurisdiction of a court of equity, the second section of the 179th chapter of the Code of 1849 places them (on proof of their allegations) on the same footing as if they had obtained judgments against Tichenor before filing their bills. To enforce such judgments against the property of Tichenor in the hands of his fraudulent alienees, would now, on account of the facts already adverted to, defeat no purpose or policy of the bankrupt law, nor interfere, in any manner, with the right of the bankrupt court to administer the assets of the bankrupt.
In a suit brought by the assignee in bankruptcy or any claiming under him, the alienees of Tichenor might rely on the limitation of two years prescribed for such suits. But such defense, so far from presenting a bar to the claims of the creditors in this suit, just mentioned, shows a state of facts remitting them to the rights which they had before the decree in bankruptcy, and protecting the alienees from all danger of being subjected to a double recovery. No effort has ever been made by the assignee in bankruptcy, or any claiming under him, to disturb Cary or his trustees, or the assignees of his bonds, in the enjoyment of any rights which they may have acquired by the conveyances and assignments under which they claim ; and no effort of the kind could now be of any avail. They are no longer exposed to demands founded on the proceedings in bankruptcy, and they can no • longer set up those proceedings as a defense against those creditors of Tichenor who are in a condition to enquire into the fairness and validity of his convey *38 anees and assignments. It seems to me that the Circuit court had full jurisdiction of the controversy, and power to determine the conflicting claims of the parties, uninfluenced by the proceedings in bankruptcy. But it seems to me that the Circuit court erred in proceeding to render a decree in the absence of David A. Hayes. Upon the supposition of the truth of the averments contained in the answers of Tichenor and the trustee Scott, he may have most important interests in the controversy, rendering it proper that he should be made a party before the subject is disposed of. For though the deeds from Tichenor to Cary and from Cary to his trustees should, upon a final hearing of the cause, be adjudged to be void as to the creditors of Tichenor, it would not, I think, necessarily follow that assignees, for value without notice, of the bonds given by Cary, might not have a better right to subject the property to the payment of the bonds than any creditor of Tichenor, who did not claim by some lien on the property, acquired prior to the execution of the deeds. Ho proof was offered of the assignment to Hayes, other than the affidavits of Tichenor and Scott.
These affidavits, however, furnished a sufficient ground for justifying and requiring the court to make a rule on the plaintiffs in the several suits, to show cause why the said Hayes should not be made a party.
And without expressing any opinion as to the extent and nature of the interests in the cause, which may be held by Hayes, or by Allen as assignee of the two bonds which he claims to hold as collateral security for the debt claimed by him in his bill, I think that the cause should be remanded in order that, unless the plaintiffs in the several bills will amend them, and make Hayes a party thereto, they be compelled to do so, if, upon the hearing of a rule to show cause why they should not make him a party, first granted, it *39 shall appear that the said Hayes is an assignee of any of the bonds given by Cary to Tichenor, as averred in the answers of Tichenor and Scott; and in order for further proceedings, &c.
The other judges concurred in the opinion of Daniel, J.
Decree reversed.