Graves *v.* Coutant.

ELIZA A. GRAVES, appellant,

*v.*

EBURN H. COUTANT, respondent.

1. If a person purchases land of a vendee, with notice of the vendor's equitable lien for purchase-money, such purchaser will be charged with the same trust as the vendee.

2. The defence of a *bona fide* purchaser must be clearly and unequivocally set up in the answer, with the particulars of the purchase, and must be distinctly proved.

3. The claim of a vendor's lien for purchase-money, is one of peculiar equitable cognizance, and a vendor having no judgment or execution which binds the land, does not stand in the position of a creditor at large without remedy against the land in equity.

4. The recovery of a judgment at law for the unpaid purchase-money, will not merge or affect the vendor's lien.

5. The limitation of actions, if it be a defence against a vendor's lien, will not run while an action is pending in another state for the recovery of the debt, and the time of limitation must date from the judgment.

6. Where, by the law of a state, a vendor's lien for purchase-money is recognized, a discharge in bankruptcy of the vendee or his purchaser with notice, will not discharge the land.

NOTE.—Whether the statute of limitations applies to a contract implied by law, see *Jordan* v. *Robinson*, 15 Me. 167; *Wickersham* v. *Lee*, 83 Pa. St. 422; *Gowers's Case*, 3 Mont. & A. 172; *Townsend* v. *Townsend*, 1 Bro. C. C. 551; *Skeet* v. *Lindsay*, L. R. (2 Ex. Div.) 314. Whether it applies to a suit for specific performance of a contract for the sale of

On appeal from a decree advised by the master, Henry C. Pitney, esq., who stated *orally* the following reasons for the decree:

This is a bill filed by Eburn H. Coutant against Eliza Annette Graves, seeking to charge certain lands of the defendant, in the county of Hudson, and also all proceeds of those lands—such of them as have been sold—in the hands of the defendant, for the purpose of paying a judgment recovered by Mr. Coutant, in the supreme court of the state of New York, against Rosewell Graves the husband of Eliza Annette Graves.

The facts upon which the complainant founds his equity for the relief prayed for in this court, are driefly as follows: In 1853, Mr. Coutant conveyed to Mr. Graves, the husband of the defendant, by two deeds, each comprising the equal undivided one-half part of the premises in question, and therefore amounting in substance to one deed, certain lands in Bergen Neck, in the county of Hudson, of considerable value. The consideration money expressed, if I recollect, is $50,000. Shortly afterward some dispute arose between Coutant and Graves with regard to the value of certain parts of the property, and with regard to the payment of the purchase-money. The particulars of that dispute I have not gone into very carefully, but the result was that, shortly after the conveyance, an action was brought by Graves against Coutant, in the supreme court of the state

---

lands, see *Washburn* v. *Washburn*, *4 Ired. Eq. 306; Smith* v. *Smith, 1 McMull. Eq. 126; Hemming* v. *Zimmerschitte, 4 Tex. 159; Yeary* v. *Cummins, 28 Tex. 91; Collard* v. *Tuttle, 4 Vt. 491; Brennan* v. *Ford, 46 Cal. 7; Lowell* v. *Kier, 50 Cal. 646; Peters* v. *Delaplaine, 49 N. Y. 362; Evans* v. *Yongue, 8 Rich. 113; Wright* v. *Leclaire, 3 Iowa 221; Gregorie* v. *Bulow, Rich. Eq. Cas. 235; Moore* v. *Blake, 1 Ball & B. 69; Phillipson* v. *Gibbon, L. R. (6 Ch.) 428.*

In the following cases the statute has been held applicable to suits to enforce vendor's liens: *Moore* v. *Anders, 14 Ark. 628; Linthicum* v. *Tapscott, 28 Id. 267; Cooper* v. *Lowery, 54 Ga. 198; Trustees* v. *Wright, 11 Ill. 603, 12 Id. 432; Trotter* v. *Erwin, 27 Miss. 772; Littlejohn* v. *Gordon, 32 Miss. 235; Avent* v. *McCorkle, 45 Miss. 221; Borst* v. *Corey, 15 N. Y. 505; Fullerton* v. *Spring, 3 Wis. 667; Sheratz* v. *Nicodemus, 7 Yerg. 9; Ray* v.

Graves v. Coutant.

of New York.  To that suit Coutant filed a counter-claim, or set-off, setting up, among other things, that Graves was indebted to him for a part of the purchase-money on the sale of the Hudson county property.  That suit went on to trial and was heard before Judge Brown of the supreme court, and, some time previous to the 1st of March, 1860, Judge Brown made a finding of facts, which is found on pages 16 and 17 of the judgment roll of the supreme court offered in evidence, which is in the nature of a special verdict, by which he found that the Hudson county land had not been paid for, and stated the amount of money due on it.  There was no judgment entered at that time, because Judge Brown ordered a re-argument on some other minor matters.  Subsequently counsel were heard on those matters, and on the 5th of March, 1860, judgment was rendered in favor of Coutant, against Graves, for $6,344.10 besides costs.  At or about the time of the rendering of that judgment, Graves conveyed the property in Hudson county, to Jacob R. Wortendyke, who conveyed it back to his wife, the defendant, the nominal consideration in both deeds being $1,000.  An appeal was taken from the judgment in New York, to the general term of the supreme court, which affirmed the judgment, some time in 1863. A re-argument was ordered, and the judgment was again affirmed.  It was twice heard in the supreme court, and both times the judgment was affirmed.  The last affirmance was in 1865.  An appeal was then taken by Graves to

Goodman, 1 Sneed 586 ; Gudger v. Barnes, 4 Heisk. 570 ; Gibbs v. Holmes, 10 Rich. 484; Toft v. Stephenson, 7 Hare 1, 5 DeG. M. & G. 735.

In the following cases the statute has been held not to be applicable to a suit to enforce a vendor's lien : Driver v. Hudspeth, 16 Ala. 348; Relfe v. Relfe, 34 Ala. 500; Moreton v. Harrison, 1 Bland 491; Leinhart v. Forringer, 1 Pa. 492; Evans v. See, 23 Pa. St. 88; Magruder v. Peter, 11 Gill & Johns. 217; Hopkins v. Cockerell, 2 Gratt. 88; Hanna v. Wilson, 3 Gratt. 243.  See Belknap v. Gleason, 11 Conn. 159.

Query, Would an acknowledgment of the existence of a vendor's lien extend or revive it?  See Toft v. Stevenson, 5 DeG. M. & G. 735; Lingan v. Henderson, 1 Bland 236; Wheeler v. Smith, 2 Jones Eq. 408.— Rep.

the court of appeals of New York. Pending that appeal, in 1868, Graves, who had previously been a man of means, became a voluntary bankrupt. In 1871 he was discharged from his debts as a bankrupt, and in 1873 died.

In 1875, the case in the court of appeals, of Graves, appellant, and Coutant, appellee, was reached, and the appeal dismissed, and that judgment of dismissal was made the judgment of the general term, as appears by the judgment record. Shortly after the rendering of that judgment, the complainant filed his bill herein, in this court, setting out these facts, and claiming a decree in the form stated, and relying particularly on two grounds. I will consider those two grounds separately. First, he says, he is a general judgment creditor, not a judgment creditor in this state, but a general creditor by a debt which has been absolutely fixed by the judgment of a sister state, and that, as such judgment creditor, under the peculiar circumstances of this case, he has a right to come into the court of chancery, and take this property, of which he alleges Mrs. Graves is not a *bona fide* purchaser, but which was conveyed in fraud of this very debt, and appropriate it to the payment of his debt.

A very ingenious argument was addressed to me, on the part of the complainant, in support of this contention, and authority has been cited from sister states, and the case has been stated to be an exception to the rule laid down by Chancellor Runyon, in the case cited of *Davis* v. *Dean, 11 C. E. Gr. 436,* where it was held that a man must have a judgment and execution in this state before he can reach lands in New Jersey. I am unwilling to follow the argument of the counsel for the complainant on that point. I think it is founded on a misapprehension of the law. I think this case *is* an exception to the case just referred to, in that here the judgment debtor is dead, and, under its peculiar circumstances, there can be no other remedy. The creditor may be said to have exhausted his remedy at law, and, unless this court can relieve him, he is without remedy. But the

Graves *v.* .Coutant.

difficulty is, that I do not know of any equity in New Jersey by which the court of chancery can be called upon to appropriate land for the payment of a debt of a decedent. Judgment liens upon land in New Jersey are acquired by virtue of the statute which requires judgment and execution. And where they are sold to pay the debts of a decedent, they are sold by virtue of the statute. And, although there are abundant authorities from sister states in favor of complainant's contention, I do not think they apply here, whatever may be their soundness in the states where they were made. I will state to counsel, further, that I have an impression—which I have not followed very far—that the court of chancery of this state did at one time assume the jurisdiction of applying the lands of decedents to the payment of their debts, in the course of the administration of their estates.

In 1743, the colonial legislature passed an act, found in *Allinson 129*, by which, for the first time, I believe, in the state of New Jersey, land could be subjected to the payment of debts or judgments, and the first section of that act declares, in round terms, that land shall be an asset for the payment of debts, in all respects, the same as personal property. In 1784 the orphans court act was passed, and the eleventh and twelfth sections of that act provided for the sale of lands to pay debts of decedents, where one of the heirs or devisees was a minor. In 1786 an act was passed which included all lands, whether of minors or not. In the meantime, the act of 1743 remained in force, until 1799, when it was repealed, and substituted for it was Judge Paterson's act, which provides for the sale of land by sheriffs &c.—substantially our act, as it remained in force many years. But I happen to know that just about that time the court of chancery *did* assume jurisdiction to apply lands of a decedent to the payment of his debts, by a bill filed for that purpose. I have a case in my mind which arose in Morris county, the case of John Jacob Faesch, but whether the bill was filed just before or just after the act of 1799, repealing the act of 1743, I do

not know.   I have an impression that possibly the court of chancery, under the very wide jurisdiction it assumed under the colonial authority, and by virtue of the first section of the act of 1743, may have assumed that sort of jurisdiction, but I am not aware that is has ever been exercised since. In fact, I think the settled rule now is, that where a man dies, leaving an estate of land, you can only get at that to pay debts, if you have not a judgment and execution, through the orphans court.   However, I do not pretend to have followed the subject out; I do not know that I am fitted for it ; I am not an historical expert of New Jersey law.

I decline to advise a decree on the first ground.

On the second ground, however, I think quite differently. The second ground on which the complainant asks a decree is, that the debt evidenced by the judgment in New York, was for a part of the purchase-money on the sale of the Hudson county land by Coutant to Graves, and that a lien —vendor's lien—resulted, which he is still in a position to enforce.

And first, now, whether or not there is proof that this debt, on which the complainant founds his equity in this case, was a debt resulting from the sale of that land—and I think that must be held as conclusively proved in this case —the finding of Judge Brown in the New York suit, which is in the nature of a special verdict, so finds. He particularly states and finds that Graves did not pay for that land, by any of the transactions between the parties.   The pleadings clearly raise the issue, and it is so found by Judge Brown. Independent of the parol evidence in this case, I think there is sufficient to show the debt is a debt for consideration money unpaid.   Then we have, in addition to the record of the New York judgment, the evidence of the complainant in this suit.   The evidence of the complainant has been criticised in this respect—that it is very loose and unsatisfactory.   It may be open to that criticism, but I do not know that that helps the defendant at all.   The complainant is not called upon to retry the case in New York.

Graves *v.* Coutant.

It was a very complicated case, and it proved to be a very difficult thing to determine how the purchase-money was settled between the parties at the time; and the complainant, probably, never understood it himself, and certainly could not be expected to explain it without a refreshment of his memory, when put upon the stand in this case, after so long a time; and what he does swear to in substance is, that the judgment there recovered, was for the purchase-money of this property, and that, in point of fact, it was not paid; he cannot tell how, or explain how, but I think I must find in that way.

If, then, this is a debt for purchase-money, it follows, I think, that the complainant is entitled to relief, unless some of the defences set up prevail, and I will consider them in detail.

The first defence set up is that of " *bona fide* purchaser for a valuable consideration." I believe my friend, Mr. Emery, did not press that very strongly. I think it must fail. The complainant, in his bill, makes out a clear *prima facie* case of vendor's lien, and then he calls on the defendant; he charges the defendant with not being a " *bona fide* purchaser," and calls upon her, in his bill, to set out what she did pay, and how she paid it. That casts the duty on the defendant to set out in her answer, fully and in detail, how and what she paid. That, I think, she fails to do. She does, indeed, pretend to say that she paid $1,000, but that is no consideration for the property. I think she stated herself, out of court, so to speak, on this point: "And this defendant, further answering, says that she did pay to the said Jacob R. Wortendyke, through her agent, the consideration in said deed expressed; that she had money of her own, in her own right, at the time of her marriage with the said Rosewell Graves, and that afterwards, and during her marriage, she derived from her father's estate a large sum of money, which was entrusted to her husband, and out of which her husband, the said Rosewell Graves, was to, and did, pay for said property; and the funds so used to pay for

said property, were the funds of this defendant, as her own separate estate."

Now, as I understand that, it is an allegation that Graves bought the property for her, and paid complainant for it, so far as he did pay, with her money. If she did not pay for it in full, she was really the grantee. She cannot be in the position of a " bona fide purchaser," as against the very person from whom she purchased, who claims the vendor's lien. That allegation in the answer would be a good answer to a general judgment creditor, if it be the truth, but not on the question of vendor's lien. Then there is a variety of other evidence, which it is not necessary for me to refer to in detail on the subject, and no satisfactory explanation is given to show why the conveyance was made just after Judge Brown had announced his decision, giving it substantially in favor of the defendant Coutant, the complainant in this case. And the whole circumstances show it was done through her husband, who knew about these matters, and was her agent. I think that defence fails.

The next defence set up is the discharge in bankruptcy. It is not pretended that a mortgage existing at the time of the discharge in bankruptcy, or any actual existing lien, would be destroyed by the proceedings in bankruptcy, or by the discharge of the debt as a debt; but the defendant put herself on the ground that a vendor's lien is not of that character, that it is not a lien " ex proprio vigore," but is a lien created by the court of chancery after bill filed for that purpose. And counsel quotes, in support of that view, an extract from Judge Story's opinion in Gilman v. Brown, 1 Mason 191, 221: " The vendor's lien is a mere creature of a court of equity. It is, in short, a right which has no existence until it is established by a decree of the court in a particular case, &c."

Now, it may be very presumptuous for an obscure individual like myself to dissent from Judge Story in anything that he says, but I must do it. I think that opinion of Judge Story undoubtedly wrong, and founded on a misap-

Graves *v.* Coutant.

prehension of equity. What is an equity? A right arising out of certain facts. A man sends his agent with money to buy an estate; the agent takes the deed in his own name instead of the name of his principal; an equity at once arises out of· those facts in favor of the principal to have the title conveyed to the principal by the agent, of that land of which, in equity, the principal is the owner all the time; he is the owner from the first. A man contracts in writing with another to purchase an estate; on the day named he pays the money, and for some reason or other the deed is not made; then an equity arises out of the facts that he shall have the deed; it arises at once out of the facts. An equity is never created by the court; it exists independent of the court. All the court of chancery does is to recognize and enforce it. It is a solecism to say the court of chancery creates an equity. Then a lien for purchase-money—what is a lien for purchase-money? It is not a lien in the strict sense of the word; at law a lien cannot exist without actual possession. It is a right the pledgee has in the thing pledged, to keep possession until some duty is performed. An equitable lien is a right which a person out of possession may have to the thing, and it is simply a right to come into the court of chancery, and have that right enforced, applied, and to take the fruits of it, which he cannot have without the aid of the court of chancery; and it arises out of the facts and circumstances of the case. Now, where a man delivers a deed for property, and does not get the consideration money, an equitable lien arises at once in his favor, according to my view of it, of exactly the same nature, as far as the court of chancery is concerned, as if he had taken a mortgage in writing, sealed and delivered, and it is so held by Chancellor Zabriskie, in *Armstrong* v. *Ross, 5 C. E. Gr. 109.* There, as you no doubt recollect, the chancellor held that a void mortgage given by a married female for purchase-money, was good and enforcible in equity as a vendor's lien, and had existed, of course, from the time it was given. In such cases the court says that it

is contrary to equity and natural justice for the vendee to keep the land without paying the purchase-money, and it seizes upon the land in his hands, and applies it to the payment of the purchase-money. This right to come into this court, and ask such aid from the court, is called a vendor's lien.

Therefore, without enlarging further on this point, I would say that I think the lien existed as soon as ever the deed was given, and the money was not paid. I may say, here, that while this equitable right of vendor's lien has been differently treated and recognized in different states of the Union, there is no state in the Union where it has been put on higher grounds, and treated as a greater favorite, than by the courts of the state of New Jersey, and it has always been treated as a substantial right. I refer to *Van Doren* v. *Todd, 2 Gr. Ch. 397*, a case somewhat in point; *Brinkerhoff* v. *Van Sciven, 3 Gr. Ch. 251; Corlies* v *Howland, 11 C. E. Gr. 311; Dudley* v. *Dixon, 1 McCart. 252*. I think, therefore, that the right of lien sought to be enforced in this case, was an equitable right in the land, which existed at the time the discharge in bankruptcy was granted, and that the lien was not discharged, or the right defeated, by the discharge in bankruptcy.

The next defence set up is, lapse of time in analogy of the statute of limitations; and that, I think, must fail, also; I do not see how it can apply. It is true the time when the lien arose was more than twenty years ago, but the judgment was not twenty years old when the bill was filed here, and the statute of limitations could not even be applied to the judgment. I think I ought to have mentioned, on the other point, the case of *Ocean Bank* v. *Olcott, 46 N. Y. 12*, cited by defendant. I do not think it applies at all; the circumstances of that case were entirely different. It was not a case of vendor's lien, but of a statutory right given to a judgment creditor to come into court and impeach a certain class of conveyances, and the court held that juris-

Graves *v.* Coutant.

diction was based on the statute which requires an actual existing debt *in personam.*

But there is another case in New York which was not cited, which bears closely upon the question of the statute of limitations. You will find it cited in *Jones on Mort.* § *1209.* It is an earlier case than the case in *46 N. Y.* It is *Borst* v. *Corey, 15 N. Y. 505.* That is a case where the statute of limitations was set up against a vendor's lien, because the deed was more than six years old. If that case was in point, I would not follow it. But I do not think it is in point, because here the debt itself is not outlawed. I refer, on this part of the case, to *Lingan* v. *Henderson, 1 Bland 272,* and *Moreton* v. *Harrison, 1 Bland 501.* Then, I think the statute of limitations does not apply.

Then it is said there is a defect of parties, viz., the assignee in bankruptcy and personal representatives; but I can not see any defect of parties. I can not see who can be said to be interested in this property, who has not been made a party. The case shows, if it shows anything, that the deed impeached in favor of complainant, is good between Graves and his wife, and none of his heirs at law can touch it. They have no interest in it. Then the administrators, if any there be, have no interest in it, and there is no party in the world, except possibly the assignee, who has a particle of interest, because the deed, by the well-settled rules of law, was good between the parties.

And then there is no right of recovery over by the defendant against the personal estate in this case, if there was any personal estate to recover against. And it does not appear that the assignee in bankruptcy has made any claim against this property, nor that he had any interest in it, or could sustain any claim. And if he could, the defendant can not complain that he has not been brought in.

That point—want of parties—was not taken in the answer, and the court would be very reluctant, at this stage of the case, to listen to such an objection. Therefore, I am prepared to advise a decree in favor of the complainant.

Some things I have not fully considered, whether or not there ought to be (I have partly considered this) an inquiry as to what defendant has received from the sale and the mortgage of the lands. I am inclined to think there should be such an inquiry, unless counsel can show some reason to the contrary, as to what money she has received. As to the extent and exact form of that inquiry, I have not considered, nor have I considered whether or not there is anything in the case to warrant an inquiry as to whether or not all the judgment in New York was for unpaid purchase-money. My impression is, the case shows it was. I did not examine it carefully. If counsel can show it was not all for unpaid purchase-money—from the record, of course, they can not go outside of the record for that—that question may be left open, and I will hear both counsel, if they wish.

*Mr. Leon Abbett*, for appellant.

I. The complainant has no standing in court, as a creditor at large, to impeach the conveyance to the defendant, or to subject the lands in question to the payment of his debt. *Davis* v. *Green, 11 C. E. Gr. 436; Ocean National Bank* v. *Olcott, 46 N. Y. 12, 18; Pratt* v. *Curlis, 6 N. B. R. 129; Inking* v. *Wilcox, 11 Paige 589; Day* v. *Cooley, 118 Mass. 524.*

II. The complainant had no lien on the lands in question, either before or at the time of Roswell Graves's discharge in bankruptcy, and said discharge bars and extinguishes any claim or equity which the complainant, as vendor, may have had prior thereto, for any unpaid balance of purchase-money. *Ocean National Bank* v. *Olcott, 46 N. Y. 12–16, 22; Ruckman* v. *Cowele, 1 N. Y. 505; Depuis* v. *Swart, 3 Wend. 135; Baker* v. *Wheaton, 5 Mass. 509; Stewart* v. *Reckless, 4 Zab. 427; Borst* v. *Corey, 15 N. Y. 505, 508; Story's Eq. Jur. § 1216; Neate* v. *Duke of Marlborough, 3 Myl. & Cr. 407, 415; Gilman* v. *Brown, 1 Mason, 191, Story J.; Trotter* v. *Erwin, 27 Miss. 772; Mackreath* v. *Symons, 1 White & Tud. Lead. Cas. in Eq. 491, 492; Story's Eq. Jur. § 1217; Baum*

v. *Grigsby, 21 Cal. 172; Williams* v. *Young, Id. 227; Palmer*
v. *Merrill, 57 Me. 30.*

III. The judgment obtained in the New York supreme
court, merged and extinguished the original debt for any
balance of purchase-money, and the vendor's lien or equity,
being based solely on the original debt, was merged and
extinguished at the same time. *Barnes* v. *Gibbs, 2 Vr. 318;
Borst* v. *Corey, 15 N. Y. 505.*

IV. The complainant's claim is barred by lapse of time,
more than twenty-three years having elapsed since it
accrued. *Borst* v. *Corey, 15 N. Y. 505, 508; Trotter* v.
*Darwin, 27 Miss. 772, 779; Barnes* v. *Taylor, 12 C. E. Gr.
76; Ang. on Lim.* § *469; McClane* v. *Shepherd, 6 C. E. Gr.
76; Story's Eq. Jur.* § *1217.*

*Messrs. Collins & Corbin,* for respondents.

I. The conveyance was fraudulent and void.

(*a*) Defendant had actual notice. *Tillinghast* v. *Champlin,
4 R. I. 173; Hopkins* v. *Doty, 25 Wis. 573.*

(*b*) Defendant had constructive notice. *McLaren* v. *Hall,
26 Iowa 297; Case of Distilled Spirits, 11 Wallace 356;
Story's Eq.* §§ *399, 408; Williamson* v. *Brown, 15 N. Y. 354,
359; Sheldon* v. *Cox, 2 Eden 228; Dryden* v. *Frost, 3 Myl. &
Cr. 670; Weilder* v. *Farmers Bank, 11 Serg. & R. 134; Bank
of U. S.* v. *Davis, 2 Hill 451, 461: Kennedy* v. *Green, 3 Myl.
& K. 699, 719; Dart on Vendors p. 412; 3 Sugden on Vend-
ors p. 319; Bourset* v. *Savage, L. R. (2 Eq.) 134; Rolland*
v. *Hart, L. R. (6 Ch. App.) 678, 682; Bump on Fraudulent
Conveyances, 547, 548.*

(*c*) Defendant is not a *bona fide* purchaser for value. *2
White & Tudor's Lead. Cas. in Eq.* (ed. 1876) *33, 83, 84, 99, 102,
106, 107, 134; Lloyd* v. *Lynch, 4 Casey 419; Haughwout* v.
*Murphy, 7 C. E. Gr. 531; Patten* v. *Moore, 32 N. H. 382;
Everts* v. *Agnes, 4 Wis. 356; Boyd* v. *Dunlap, 1 Johns. Ch.*

50

*478; Demarest* v. *Terhune, 3 C. E. Gr. 532; Mingus* v. *Condit, 8 C. E. Gr. 313; Pancoast* v. *Duval, 11 C. E. Gr. 445; Cary* v. *White, 52 N. Y. 138; 1 Hilliard on Mortgages p. 680; Annin* v. *Annin, 9 C. E. Gr. 184.*

II. Complainant's claim as a general creditor. *Bean* v. *Smith, 2 Mason 283; Curtis* v. *Gibbs, 1 Pen. 399; Davis* v. *Dean, 11 C. E. Gr. 436; McCartney* v. *Bostwick, 32 N. Y. 53; Pendleton* v. *Perkins, 49 Mo. 565; Peay* v. *Morrison, 10 Gratt. 149; Sweeney* v. *Ferguson, 2 Blackf. (Ind.) 129; Greenway* v. *Thomas, 14 Ill. 271; Shurts* v. *Howell, 3 Stew. 418,* and cases cited; *Hasten* v. *Castner, 2 Stew. 536; Palmer* v. *Morrill, 57 Me. 26; Ocean Bank* v. *Olcott, 46 N. Y. 12; Bump's Bankruptcy p. 746,* citing *Otis* v. *Gazlin, 31 Me. 567,* and *Maxim* v. *Morse, 8 Mass. 127; Tichenor* v. *Allen, 13 Gratt. 15; Clark* v. *Clark, 17 How. 315; Crossley* v. *Ellsworthy, L. R. (12 Eq.) 158; Rugely* v. *Robinson, 19 Ala. 404; Phelps* v. *Curtis, 16 N. B. R. 85, 80 Ill. 109.*

The assignment in bankruptcy. *Bump's Bankruptcy (8th ed.) p. 590,* notes to § *5046. Smith* v. *Dispatch Co., 6 Vr. 60; Tichenor* v. *Allen, 13 Gratt. 15; Rugely* v. *Robinson, 19 Ala. 404; Allen* v. *Montgomery, 48 Miss. 101; Dewey* v. *Moyer, 16 N. Y. Sup. Ct. 473 (1877); Phelps* v. *Curtis, 80 Ill. 109, 16 N. B. R. 85; Bank* v. *Leggett, 51 N. Y. 552; Wood* v. *Stover, 1 Stew. 248; Kinna* v. *Smith, 2 Gr. 14; Parker* v. *Stevens, Id. 56; Kelsey* v. *Western, 2 N. Y. 500; Seaman* v. *Kimball, 4 Barb. Ch. 344; Earle* v. *Camp, 16 Wend. 571; Duncan* v. *Spear, 11 Wend. 57; Cogdel* v. *Exum, 69 N. C. 464; Colie* v. *Jamison, 4 Hun 284.*

III. Vendor's lien. *Lewis* v. *Hawkins, 23 Wall. 119; 1 Lead. Cas. in Eq. (ed. of '76) p. 483; Gerson* v. *Green, 1 Johns. Ch. 308; Pylant* v. *Reeves, 53 Ala. 132; Russell* v. *Watts, 41 Miss. 602; Perkins* v. *Gibson, 51 Miss. 699; Armstrong* v. *Ross, 5 C. E. Gr. 209; Garland* v. *Rives, 4 Rand. 282; Smith* v. *Smith, 22 Iowa 516; Potter* v. *Phillips, 44 Iowa 353; Fox* v. *Moyer, 54 N. Y. 125.*

IV. Limitation.  *1 Phil. Evidence p. 676, note 193 ; 3 Id. 408.*

V. Accounting.  A fraudulent grantee must account for the proceeds of the property, to the creditor in fraud of whom the conveyance was made.  *Dupley* v. *Kleinsmith, 11 Wall. 610 ; Post* v. *Stiger, 2 Stew. 554 ; Clement* v. *Moon, 6 Wall. 229 ; Ames* v. *Blunt, 5 Paige 20 ; Keep* v. *Sanderson, 12 Wis. 391; Steere* v. *Hoagland, 50 Ill. 377 ; Swinford* v. *Rogers, 23 Cal. 234.*

The opinion of the court was delivered by

SCUDDER, J.

The complainant's bill was filed to enforce a vendor's lien for part of the purchase-money of lands at Bergen Neck, in the county of Bergen (now in the city of Bayonne, in the county of Hudson) and state of New Jersey.  By two several deeds, dated January 10th, 1853, and January 13th, 1853, respectively, the complainant conveyed these lands to Roswell Graves, the husband of the defendant.  Judgment for a balance of the purchase-money was obtained by Eburn H. Coutant, the complainant, against Roswell Graves, in the supreme court of the state of New York.  The suit was commenced by Graves against Coutant, July 7th, 1854 ; a counter-claim for the purchase-money was set up, and, after a long litigation, an appeal taken from the judgment of the supreme court was dismissed October 27th, 1875, and the judgment of that court, dated May 24th, 1860, was affirmed for $6.433.66, with interest from May 24th, 1860, and for $223.59, costs of increase, with interest from July 6th, 1864.  While this suit was pending, to wit, on March 1st, 1860, Roswell Graves conveyed to Jacob R. Wortendyke, in consideration of $1,000, as stated in the deed, all that part of the premises conveyed to him by this complainant, which had not been sold by him up to that date.  On March 5th, 1860, only five days later, Wortendyke conveyed

the same property to this defendant, Eliza A. Graves, wife of Roswell Graves, for the consideration therein expressed of $1,000, by deed, without covenants for title. After the above deed to her, Mrs. Graves made conveyances and mortgages of portions of the premises conveyed to her.

On January 21st, 1871, Roswell Graves was discharged in voluntary bankruptcy, this claim not having been proved against him in said proceedings. He died July 29th, 1873. The bill of complaint in this case was filed in March, 1876. It is, in effect, to establish and enforce, by the decree of the court of chancery, the complainant's alleged lien for unpaid purchase-money, the amount of which had been settled by the judgment in the state of New York, upon so much of these lands as may still remain unsold in the name of said Eliza A. Graves, and an account from her for lands sold, charging that she is not a *bona fide* purchaser.

Upon this last point, I agree with the master in his opinion, that her uncertain statement of the consideration paid by her for this conveyance, and the small sum of $1,000 in money, which she says she has paid, are insufficient evidence of a fair purchase for a good consideration of the large and valuable property described in the deed to her. As to this complainant, she stands in no more favorable position than her husband would do if he were living. She must be charged with notice of this claim when the conveyance was made to her, and there is also sufficient evidence that she had actual notice of an unsettled claim for purchase-money, which was opposed by her husband's allegation that he was deceived by a misrepresentation that there was no encumbrance on the property at Bergen Neck, when he bought of Coutant. This was the matter adjusted in the litigation in New York, and she knew of this controversy and suit resulting in the judgment which is produced here as evidence of the amount due and unpaid.

She further bases her title upon her husband's agency, in acting for her, and using her money in purchasing the property, thereby assuming all the knowledge and notice

that he had.    If she had paid a valuable consideration, with notice of the equitable rights of the complainant, she would hold the property subject to such equitable interests; and, if she did not pay such consideration, *a fortiori*, she will be charged with the same trust, in respect to the property, as her husband, from whom, or through whose agency, she has purchased.    *Le Neve* v. *Le Neve, Amb. 436; 2 Lead. Cas. in Eq. 231; 1 Perry on Trusts § 217 and note (4).*

It is not only necessary that a defendant setting up a defence of a *bona fide* purchaser should clearly and unequivocally state in the answer that the purchase was for value, without notice, but he must also set forth all the particulars of the purchase, and must distinctly prove them.    There has been a failure in this particularity, both in the answer and in the proof, in this case.    We must therefore consider it upon its merits between the original parties.

And first, it is said that the complainant occupies the position of a creditor at large, having no judgment in this state, or execution, which binds these lands in controversy, citing *Bigelow Blue Stone Co.* v. *Magee, 12 C. Gr. 392; Davis* v. *Dean, 11 C. E. Gr. 436,* and other cases.    But this rule is not applicable, for here the lien is an equitable one; the. remedy at law is inadequate, and practically exhausted. The case is, therefore, exceptional.    See *Haston* v. *Castner, 2 Stew. 536; Shurts* v. *Howell, 3 Stew. 418,* and the same cases on appeal.

The claim of a vendor's lien for purchase-money is one of peculiar equitable cognizance, and is only maintainable in a court of equity.    There is a constructive trust when lands are conveyed and no security is taken for the purchase-money, that the purchaser shall be a trustee of the land for the vendor, until the purchase-money is paid.    An equitable lien is given on the land for this unpaid purchase-money, not only against the vendee, but against all subsequent purchasers who take *mala fide*, or with notice that the purchase-money remains unpaid.    This is the established law of our state, where our court of equity has followed the

leading case of *Mackreth* v. *Symmons, 15 Ves. 329 ; S. C., 1 Lead. Cas. in Eq. 336 &c.; Van Doren* v. *Todd, 2 Gr. Ch. 397 ; Brinkerhoff* v. *Van Sciven, 2 Gr. Ch. 251 ; Herbert* v. *Scofield, 1 Stock. 492 ; Dudley* v. *Dickson, 1 McCart. 252 ; Armstrong* v. *Ross, 5 C. E. Gr. 109 ; Corlies* v. *Howland, 11 C. E. Gr. 311.*

In some of the states this doctrine is rejected. In *Gilman* v. *Brown, 1 Mason 191,* Justice Story says that "Massachusetts has no court of chancery to recognize and enforce such a lien, and the peculiar principles and doctrines of courts of equity have never been adopted into its jurisprudence." This has been recently affirmed in that state in *Ahrend* v. *Odiorne, 118 Mass. 261 (1875),* where the court says that no such lien exists in that commonwealth, in any case, without agreement in writing. The opinion of Chief-Justice Gray, in that case, is an able defence of the law as there maintained. An elaborate note, collecting the cases and different holdings of the courts in all the states, will be found in *1 Perry on Trusts* § *232, note 2.*

Chancellor Green states the law, as held in our state, in *Dudley* v. *Dickson,* thus: "The well-settled rule of equity, that the vendor of real estate has a lien upon the land sold for the purchase-money, is recognized and adopted in this state. The taking of the note or bond of the purchaser for the unpaid purchase-money will not impair the lien."

It is settled, also, that the recovery of a judgment on such note or bond, or for the purchase-money where no note or bond is taken, will not affect the vendor's lien as a merger, for until there is payment, or some legal equivalent or bar to the recovery, the lien and the equitable right to have the purchase-money, remain.

If this lien exists by the operation of a constructive trust, then I think it must also be concurrent with it, and attach at the time the vendor obtains his right in the property, and it will continue so long as the trust remains, or, as some of the cases say, so long as an action can be maintained for its collection. *1 Perry on Trusts* § *234.*

Graves *v*. Coutant.

It is held in *Borst* v. *Corey, 15 N. Y. 505*, and in *Trotter* v. *Erwin, 27 Miss. 772*, that the vendor's lien will be barred by the statute of limitations, while, in other cases (*Moreton* v. *Harrison, 1 Bland 491; Lingan* v. *Henderson, 1 Bland 236; Relfe* v. *Relfe, 34 Ala. 500*) it is said, that it is of the nature of a direct or express trust, and cannot be barred by the statute. A strong argument may be made for the former holding, from the importance of clearing title to lands.

But it is not material to determine this disputed question here, for in this case there is no bar by the statute of limitations of the debt for unpaid purchase-money. Although the sale of land was made in 1853, the action for the recovery and adjustment of this money was begun in 1854 and continued until 1875, when it was finally determined. The statute would not run against the debt during the pendency of the suit. In this state, the bill of complaint was filed in 1876. I think, therefore, that this vendor's lien is in a shape to be enforced, notwithstanding the time which has elapsed since it first attached.

The further defence that the claim was barred by the discharge of Roswell Graves in bankruptcy, in 1871, is also untenable. Upon this point *Lewis* v. *Hawkins, 23 Wall. 119*, is conclusive. It holds, in substance, that where, by the law of any state, a vendor's lien for purchase-money is recognized, a discharge of the vendee, or his purchaser with notice, will not discharge the lien of the vendor. It also covers the other point of the case, that the statute of limitations will not affect such lien, because the vendee, or the purchaser from him with notice, stands in the relation of a trustee or mortgagor for the unpaid purchase-money.

Other cases may be cited to maintain the construction that the vendor's lien for unpaid purchase-money is not discharged by bankruptcy, and will prevail against the assignee of the bankrupt. *Tichenor* v. *Allen, 13 Gratt. 15; Rugely* v. *Robinson, 19 Ala. 404; Phelps* v. *Curts, 80 Ill. 109; In re Perdue, 2 N. B. R. 67*.

There is no charge, however, in this case, that the assignee in bankruptcy ever claimed or asserted any right in this real estate in controversy, under the assignment.

The proviso in the second section of the bankrupt law, passed by the congress of the United States August 19th, 1842, "that nothing in this act contained shall be construed to annul, destroy or impair any liens, mortgages or other securities on property, real or personal, which may be valid by the laws of the states respectively, and which are not inconsistent with the second and fifth sections of that act," has been interpreted in our supreme court (*Vreeland* v. *Bruen, 1 Zab. 214*) to mean that, in letter and spirit, it embraced any liens valid by the laws of the state, whether legal or equitable, arising under contract or otherwise, or, whether perfected by judgment, or only inchoate, but valid until perfected by judgment. That case only settled the validity of a creditor's attachment under the law of this state, but the statement of the proper construction of the proviso would cover the case of a vendor's lien in equity, which is so clearly and strongly established by the law of our state. And such is the policy of the subsequent bankrupt laws, and the rule in construing them. A lien which is saved under these laws, is such an one as is recognized by the law of the state where it is claimed to be binding and effective.

It only confuses the question to refer to decisions of courts in other states where a vendor's lien in equity is not regarded as it is under the law of our state; and it is too late to discuss the policy of the law which has been so long settled by the rulings of our highest courts.

It does not appear by the pleadings or the evidence, that any other parties are interested in this controversy, except those who are now before the court as complainant and defendant; or, that there is any defect of parties; the case has, therefore, been considered and decided with reference to them ; and the defendant, both as to the lands conveyed to her which remain unsold, and the proceeds of the sales of

such portions as have been conveyed by her, should be charged with the vendor's lien for purchase-money unpaid by her husband, and claimed in this action.

The decree is affirmed.

Decree unanimously affirmed.