THE EXECUTORS OF MYLES McCARTIN, deceased,

v.

THE EXECUTOR OF EMMELINE N. PERRY, deceased, et al.

The right to recover property conveyed in fraud of creditors by a debtor subsequently adjudicated a bankrupt, is vested in his assignee alone, and the failure of his assignee to bring an action to recover the property within the time limited by the bankrupt law, does not transfer the right to bring such action to the creditors of the bankrupt.

---

On final hearing on bill and answer and proofs taken in open court.

*Mr. S. Howell Jones* and *Mr. Thomas N. McCarter*, for complainants.

*Mr. Albert P. Condit* and *Mr. John R. Emery*, for defendants.

McCartin's Executors *v.* Perry's Executor.

VAN FLEET, V. C.

The object of this suit is to reach certain moneys, the proceeds of the sale of lands alleged to have been conveyed by a debtor in fraud of his creditors. The complainants were judgment creditors of Nehemiah Perry, now deceased. Their debt was contracted in 1870, and they recovered a judgment for it in 1877. The amount still remaining due exceeds $28,000. Perry, in 1874, through a third person, conveyed certain lands at Long Branch to his wife, Emmeline N. Perry. Mr. and Mrs. Perry both died on the 1st day of November, 1881. Mrs. Perry left a will, which was admitted to probate, and under authority of which her executor sold the lands at Long Branch. He now has in hand nearly $6,000 of the proceeds of the sale. The object of this suit is to reach that money, and have it applied in part payment of the complainants' judgment. Among the defences set up is one denying the capacity or right of the complainant to maintain this action, and insisting that, if the cause of action on which the complainants' bill is founded, exists, the right to sue upon it is vested in another person, to the exclusion of the complainants and all other persons. If this defence is entitled to prevail, it ends the case, and renders it wholly unnecessary to consider the question whether the deeds alleged to be fraudulent have been shown to be so or not.

Nehemiah Perry was, on his own petition, adjudged a bankrupt on the 14th day of May, 1878, and, on the 10th of June following, his property was assigned, in conformity to the bankrupt law, to an assignee in bankruptcy. This assignment, it is insisted, invested the assignee with all property conveyed by the bankrupt in fraud of his creditors, and consequently that the assignee is the only person who can maintain an action either to recover the property fraudulently conveyed, or to invalidate the conveyances by which it was conveyed. The defence, it will be perceived, raises a question of federal law, on which this court must follow the decisions of the supreme court of the United States.

The bankrupt act declares that all property conveyed by a bankrupt in fraud of his creditors, as well as all property be-

longing to him, shall, in virtue of the adjudication of bank-
ruptcy and the appointment of an assignee, vest, at once, in the
assignee (*U. S. Rev. Stat.* § *5046 p. 981*); and also limits the
time within which the assignee may bring any action touching
property or rights vested in him, to two years from the time
when the cause of action accrues to him. *Id.* § *5057 p. 982*.
The district courts of the United States are, by the act, consti-
tuted courts of bankruptcy, and full and complete original juris-
diction in all matters and proceedings in bankruptcy conferred
upon them. Their jurisdiction extends to the collection of all
assets of the bankrupt, and to all cases and controversies between
the bankrupt and any of his creditors. *Id.* § *4972 p. 969*. The
purpose of these provisions is manifest. They were intended to
strip the bankrupt of all his property and property rights, and
invest his assignee not only with the bankrupt's property, but
also with the right of his creditors to recover any property which
he may have conveyed in fraud of their rights. The object in-
tended to be accomplished, by thus investing the assignee with
the rights of both the bankrupt and his creditors, was to secure
an equal distribution of the bankrupt's property, of every kind,
among his creditors. An adjudication of bankruptcy and the
appointment of an assignee, therefore, create a trust in favor of
creditors. By force of the adjudication, his right and theirs to
his property, and their right to avoid his conveyances made in
fraud of them, all vest in the assignee for the benefit of his
creditors, and there they must remain until the purposes of the
trust are fully accomplished. An adjudication of bankruptcy is
just as effectual against creditors as it is against the bankrupt
himself. It strips him of all his property, exempts him from
liability to suit by his creditors, and limits the right of his cred-
itors to equality in distribution of his assets. This limitation I
understand to be one of the fundamental principles of the bank-
rupt law. It follows, necessarily, that by an adjudication of
bankruptcy the creditors of the bankrupt are deprived of all
direct remedy against the bankrupt, and also against any prop-
erty which he may have conveyed away in fraud of them, and

that all such remedies are, by operation of law, vested in the assignee, who alone can enforce them.

A different rule seems to have prevailed in Virginia. Under the bankrupt law of 1841, the court of appeals of Virginia held that if the assignee of a bankrupt did not, within the time limited by that act, bring an action to recover property which the bankrupt had conveyed in fraud of his creditors, any judgment creditor of the bankrupt might, after the assignee's right of action was barred by lapse of time, maintain an action in his own name to recover such property. This result was reached by the following argument: That while it was true, there was an interval of time during which an exclusive right of action for such a purpose was vested in the assignee, and during which no creditor could sue, yet when that period had expired, and the assignee's right to sue had terminated by lapse of time, the creditor, whose right of action had not been wholly extinguished, but merely suspended, was remitted to his rights as they stood before the adjudication of bankruptcy. *Tichenor* v. *Allen, 13 Gratt. 15.* And the court of appeals of New York have, in dealing with the recent bankrupt law, adopted a similar view. They declared that if an assignee in bankruptcy should neglect or refuse to reclaim property fraudulently transferred, the creditors might maintain an action to recover it, and if it was recovered the creditor prosecuting the action would be entitled to the benefit of the property. *Dewey* v. *Moyer, 72 N. Y. 70.* But these decisions stand in direct conflict with those of the supreme court of the United States. That court has declared that the right to bring an action to recover property conveyed by a bankrupt in fraud of his creditors, is vested in his assignee alone, and that the failure of the assignee to sue within the two years allowed by the bankrupt law does not transfer this right of property or right of action to the creditors of the bankrupt. *Moyer* v. *Dewey, 103 U. S. 301; Trimble* v. *Woodhead, 102 U. S. 647; Glenny* v. *Langdon, 98 U. S. 20.* In the second case cited—*Trimble* v. *Woodhead*—Mr. Justice Miller says: "The primary object of the bankrupt law is to secure the equal distribution of the property of the bankrupt of every kind among his creditors. This

can only be done through the rights vested in the assignee and by the faithful discharge of his duty. Let us suppose, however, ·that a creditor is aware of the existence of property of the bankrupt sufficient to satisfy his own debt, which has not come to the possession or knowledge of the assignee. He has but to keep· silent for two years, and then bring suit in his own name against the fraudulent holder of this property, and make his debt really at the expense of the other creditors ; or, he may have an understanding with the bankrupt, who, after two years, and after his own discharge from all his debts, may confess judgment to this creditor and furnish him the evidence to prove the fraud, and thus secure him a preference forbidden by the act itself."

Another legal obstacle would seem to stand in the way of the complainants' success in this suit. An assignee in bankruptcy is the trustee of all the creditors of the bankrupt. A creditor may prove his debt at any time before the final distribution of assets is made. The supreme court of the United States hold that whenever a right of action, vested in a trustee, is barred by the statute of limitations, the right of the *cestui que trust,* represented by the trustee, is also barred. *Meeks* v. *Olpherts, 100 U. S. 564.* This doctrine has been applied to a right of action vested in an assignee in bankruptcy, and it has been held that if the right of action by the assignee is barred, the title of the alleged fraudulent grantee is unimpeachable by the creditors of the bankrupt. *Trimble* v. *Woodhead, supra.*

But it is argued, on behalf of the complainants, that an assignee in bankruptcy is only the trustee of such creditors of the bankrupt as prove debts against his estate, and that if no debts are proved he is not the trustee of the creditors but of the bankrupt alone, and that no evidence has been offered in this case showing ·that a single debt was proved against the bankrupt's estate. If ·this reasoning be conceded to be sound, it does not, as it seems to me, remove the complainants' difficulty. As already shown, an adjudication of bankruptcy and the appointment of an assignee, invest the assignee with the sole right of recovering property conveyed in fraud of creditors. He is invested with this right for the benefit of all the creditors of the bankrupt, the

design being to place them all on an equal footing. They may avail themselves of it or not, as they please, but they cannot, by refusing to prove their debts, defeat the law and divest the assignee of this right and transfer it to themselves. Besides, I am compelled to say that I know of no rule of law which, in a case like this, where there is no evidence either way, would justify the court in presuming that no debt had been proved against the bankrupt's estate. On the contrary, it would seem to me, in view of the fact that there were creditors, that a trust was raised in their favor, and that all they had to do to entitle themselves to the benefit of it was to prove their debts; that if presumptions are indulged in at all, it should be in favor of that course of conduct on the part of the creditors which would be the most probable and natural under the circumstances.

The complainants' bill must be dismissed, with costs.