# CHARLESTON.

ZELL GUANO CO. *v.* HEATHERLY, *et al.*

Submitted June 13, 1893.—Decided December 6, 1893.

1. BILL IN CHANCERY—PLEADING.

The bill should state the plaintiff's case with reasonable cer-

tainty--that is, the right he claims, the injury complained of, and the relief he seeks with the facts to justify it—with such accuracy and clearness, and with such detail of the essential circumstances of time, place, manner *etc.*, as will so make his case as to inform the defendant of what he is called upon to meet; stating, not conclusions of law but the facts out of which arises his right to some specific relief.

2. BILL IN CHANCERY—PLEADING.

The bill may be framed with a double aspect and ask relief in the alternative, but the states of fact upon which such relief is prayed must not be inconsistent.

3. BILL IN CHANCERY—PLEADING.

The bill must not be multifarious—that is, two distinct grounds of equitable relief even between the same parties are not to be joined in one bill.

4. BILL IN CHANCERY—PLEADING—PARTIES.

Persons are not improper defendants who are so connected with the case made as to be directly interested in obtaining or resisting the specific relief asked in the bill or given in the decree, such as claimants by written executory contract of part of the personal property mentioned in the deed of trust in controversy.

5. BILL IN CHANCERY—PLEADING—FRAUD.

Fraud is the judgment of the law upon facts and intents, and the mere general charge of fraud is not sufficient; the bill must allege the specific acts or language which constitute the fraud, or connect them with some specific act for which the defendant is in law responsible.

6. ANSWERS—RULES—PRACTICE.

Answers and other pleadings, except in cases of injunction, can only be filed at rules or in court.

7. TRUSTS AND TRUSTEES.

When, for any proper cause, a court of equity is called upon to take control of the property conveyed by a deed of trust to secure creditors, it generally goes on and has the trustee, or some one in his place, to administer the trusts under its direction, and with its sanction : has the claims and priorities of all parties ascertained and fixed before directing a sale, except for some good reason to be specially shown; and does not disburse the proceeds of sale until it can do complete justice to all, according to their respective rights.

8. TRUSTS AND TRUSTEES—TITLE.

It is not necessary to the validity of a deed of trust to secure creditors that it should be executed by them. The deed passes the legal title as soon as executed by the grantor and the trustee, and can only be avoided by the dissent or disclaimer, express or implied, of the trust-creditors,

9. TRUSTS AND TRUSTEES—FRAUDULENT CONVEYANCE—PREFERENCE.

Such trustee is a purchaser for valuable consideration, and the statute against fraudulent conveyances applies to no such conveyance made *bona fide;* but an insolvent debtor, with certain exceptions named, can no longer give priority or preference of payment to one creditor over another. See Code (Ed. 1891) § 2, c. 74.

10. TRUSTS AND TRUSTEES—FRAUDULENT CONVEYANCE.

Where such deed is made for the security of various creditors whose claims are distinct, and where part is illegal or fraudulent, and another part is fair and untainted with fraud, and the deed is not fraudulent upon its face, it will not be held void as to the latter unless they have directly or indirectly had notice of such fraud at the time of the execution of the deed, or in some way participated in the concoction of such fraud.

11. TRUSTS AND TRUSTEES—FRAUDULENT CONVEYANCE.

A creditor of the trust debtor assails the deed of trust as made with the intent to hinder, delay and defraud him in the collection of his debt, and succeeds in his impeachment of one of the preferred claims, but the other trust creditors subsequent in order of preference successfully resist such charge as to their claims, which are held to be just and honest. *Held,* such assailing creditors will not in order of payment be promoted to the place thus made vacant, but must come next in order of payment to the successful *bona fide* creditors, who will hold the places given them in the deed of trust.

W. T. ICE and DAYTON & DAYTON for appellants:

I.—1.—*First assignment of error—Demurrer—Multifarious.* —Adams Eq. (4th Am. Ed.) 652–4, and especially note 2 on p. 652; 1 Barton's Chy. Pr. 253–4; 45 N. J. Eq. 72; 85 Va. 222; 85 Va. 49; 30 W. Va. 248; 46 N. J. Eq. 380; 26 Gratt. 291; 5 Paige 65; see note in Lawyer's Co-op. Ed. N. Y. Chy. Rep. Vol. 3 (bottom page), 630, to this last case; 67 Md. 583; 33 Fed. Rep. 440.

2.—*First assignment of error—Demurrer—Insufficient allegations.*—30 W. Va. 123; 42 N. J. Eq. 563; 119 Ill. 182; 33 N. W. Rep. 654; 25 N. W. Rep. 109; 9 Pac. Rep. 65; 21 Fed. Rep. 178; 109 Ind. 514; 16 S. E. Rep. 804.

II.—*Second assignment of error—Answers not filed properly.*— 11 W. Va. 464; 33 Gratt. 548; 13 W. Va. 160.

III.—*Third assignment of error—Demurrer to amended bill.*— 83 Va. 157; 17 S. E. Rep. 2.

IV.—*Sixth and seventh assignment of error—Decreeing proceeds of land without fixing liens.*—3 Pom. Eq. Jur. § 1167 ; 36 W. Va. 794 ; 36 W. Va. 150 ; 22 Beav. 196 ; 13 Sim. 356 ; 1 Lom. Exrs. 222, 223 ; Code 1891, c. 139, s. 7 ; 12 S. E. R. 1078 ; 33 W. Va. 644 ; 33 W. Va. 116 ; 23 W. Va. 558 ; 10 W. Va. 207 ; 9 W. Va. 552 ; 14 W. Va. 387 ; 19 W. Va. 135 ; 16 W. Va. 791 ; 10 Gratt. 165 ; 3 W. 283 ; 27 Gratt. 479.

V.—*Tenth assignment of error—Setting aside trust deed in toto.*—5 Gratt. 31 ; 18 Gratt. 387, especially page 423 ; 8 Leigh 271 ; 3 Rand. 8 ; 3 Rand. 214 ; 32 W. Va. 34 ; 36 W. Va. 244 ; 36 W. Va. 516 ; 32 W. Va. 232.

VI.—*Eleventh assignment of error—the question of fraud*—(*a*) 29 Gratt. 628 ; 85 Va. 955 ; 22 W. 356 ; 17 W. Va. 717 ; 10 W. Va. 87 ; 14 W. Va. 66 ; 36 W. Va. 277 ; 36 W. Va. 649 ;—(*b*) 8 Gratt. 148 ; 11 Gratt. 348 ; 6 Rand. 285, 306 ; 22 W. Va. 356 ;—(*c*) 18 Gratt. 387 ; 8 Leigh 271 ; 1 Gratt. 274 ; 8 Gratt. 457 ; 22 W. Va. 536.

SAMUEL V. WOODS for appellees :

I.— *Where money is loaned to an insolvent to be applied upon the payment of debts, it is incumbent upon the creditor to see that it is so applied.*—Bump Fraud. Con. 206.

II.—*Crim was not a complete purchaser, nor was his trustee.*—Bump. Fraud. Con. § 201 ; Wait Fraud. Con. § 372 ; 2 Min. Inst. 877, 878 ; 15 W. Va. 831.

III.—*Payment of the whole consideration in this case would not be sufficient to protect these purchasers.*—Wait Fraud. Con. §§ 376, 374, 379, 380 ; Bump Fraud. Con. 200 ; 17 W. Va. 717 ; 22 W. Va. ; 23 W. Va. 639 ; 2 Pom. Eq. § 995.

IV.—*Fraud is usually proved from circumstances, and in rare cases only by direct evidence.*—23 W. Va. 644 ; 29 W. Va. 451.

V.—*Acts subsequent to a transaction tending to explain the motives actuating the parties in the beginning, are admissible in fraudulent transactions.*—Bump Fraud. Conv. 566, 572 ; Wait Fraud. Conv. § 280.

VI.—*An intention to defraud on the part of Heatherly, is sufficient to avoid his deed of trust, even though no fraud should*

*be effected.*—54 Md. 660; 22 W. Va. 585; 17 W. Va. 717.

VII.—*Fraudulent conduct on the part of any creditor often avoids his claim, when the deed is established as to every other claim.*—2 Herm. Estop. § 599.

VIII.—*It is a rule of the Common Law that one, who has practiced fraud, shall not derive any benefit from it.*—2 Bac. Abr. 594; 1 Pom. Eq. §§ 397, 400, 401; 2 Pom. Eq. § 899.

HOLT, JUDGE:

This was a suit in equity in the Circuit Court of Barbour county brought by the Zell Guano Company against Samuel J. Heatherly and others, to set aside as fraudulent a deed of trust executed by Samuel J. Heatherly to secure in a certain order of preference his creditors, and to enforce payment of plaintiff's claim against the grantors' property thereby conveyed. Such proceedings were had that the court on the 23d day of December, 1892, pronounced the decree appealed from, pronouncing the deed of trust fraudulent and void as to the several claims of plaintiff and the various claims of certain defendants naming them, who also assailed the trust-deed on the same ground, and providing for their payment in the order named out of a fund in court, the proceeds of the sale of certain personal property conveyed by the deed of trust.

The trust-debtor and trustee and six of the trust-creditors obtained this appeal, and they assign eleven grounds of error, which are as follows:

"First. It was error not to sustain the demurrer to said original bill, and hold the same to be inconsistent, incongruous, contradictory, and multifarious, and therefore not sustainable in a court of equity.

"Second. It was error to regard said answers of Timothy Male, the Webster Wagon Company, Thompson & Jackson, and Amos Whiteley to the original bill lodged with the papers in the month of February, 1889, and at no rule day as filed, or being any part of the record.

"Third. It was error not to sustain the demurrer to said amended bill.

"Fourth. It was error to sustain the plaintiff's tenth exception to Petitioner Crim's deposition.

"Fifth. It was error to hear said cause before it was matured at rules, and to dismiss the amended bill as to defendants C. J. and H. L. Roy.

"Sixth. It was gross error to decree the proceeds of the one hundred and ninety seven and one half acres of land sold *pendente lite,* and to which 'valid liens' attached before such sale, without ascertaining such liens, and to the satisfaction of other debts admittedly junior in priority to them.

"Seventh. It was palpable error to disburse at all the proceeds of sale of this one hundred and ninety seven and one half acres without ascertaining how such proceeds had arisen, in whose hands the same were, and the amount thereof.

"Eighth. It was error to decree to Timothy Male the debt which he, in his own evidence, admitted had been paid to him.

"Ninth. It was error to hear said cause by piecemeal, and, by declining to ascertain 'the facts necessary' to fix the liens and ascertain who were entitled to 'participate in the proceeds of sale of the real estate,' to satisfy the favored few, and leave the rights of the other creditors unsettled and in utter confusion.

"Tenth. But above all, and beyond all, it was gross and palpable error to set aside in toto, and declare null and void, as against just creditors whose debts were unassailed, this deed of trust securing their debts, in favor of seven creditors also secured by it; and it is submitted that this is the first time such a thing was ever attempted to be done by a court of equity, where such deed, on its face, did not present such conditions and provisions as to make it fraudulent per se.

"Eleventh. The court below plainly and palpably erred in not holding said deed of trust good in all its parts, and all of the debts secured thereby, including the one of petitioner Crim, honest, *bona fide* debts, free from fraud, and in not either dismissing said bill or directing said Melville Peck, trustee, to execute said trust, in all respects, as provided by its terms and stipulations."

1, 3. It was error not to sustain defendants' demurrer to plaintiff's bill and amended bill—First, because they are

multifarious and inconsistent; second, because they contain only the general charge of fraud and do not allege facts sufficient, if true, to make out *prima facie* the charge.

This suit is based in part on section 2, c. 133, Code 1891, which is section 2, c. 179, Code Va. 1849, taking effect 1st July, 1850. This statute proceeds on the theory, that the rules of equity without such statute forbid jurisdiction of a bill by a creditor assailing the fraudulent deed of his debtor, until such creditor at large has reduced his claim to judgment or decree. But in Kentucky such a statute seems to have been .enacted in 1838. See *Bank* v. *Huth* (1844) 4 B. Mon. 423, 442. For a discussion of the general subject, see *Fleming* v. *Grafton*, 54 Miss. 79; *Chamberlayne* v. *Temple* (1824) 2 Rand. (Va.) 384. In *Rhodes* v. *Cousins*, (1828) 6 Rand. (Va.) 188, 190, CARR, J., says:

"It is well-settled .law that none but a judgment creditor can have the assistance of equity to control, prevent, or interfere with, in any way, the disposition which a debtor may choose to make of his property. He may destroy it, give it away, convey it fraudulently, or sell it and waste the money, and no creditor at large can stop him by injunction."

There must be some specific right of the creditor against the property sought to be subjected; and having no certain claim upon the property of the debtor he has no concern with his frauds. To same effect, see *Tate* v. *Liggat* (1830) 2 Leigh. 84; *Kelso* v. *Blackburn* (1831) 3 Leigh. 299; *McCullough* v. *Summerville* (1836) 8 Leigh. 415. These cases led in this state (Virginia) to the enactment of the statute in question. This act first came up for consideration in *Tichenor* v. *Allen* (1855) 13 Gratt. 15, and from that day to this, as far as I know, it has been treated as giving a specific lien against the property fraudulently conveyed somewhat after the manner of the law creating a lien by attachment (see clause 6, § 1, c. 106, Code) but more especially after the manner of foreign attachment in equity, as given by section 11, c. 151, Code 1849, which required no distinct proceeding only that the affidavit as the foundation of the order of attachment be indorsed on the summons, (see Code Va. 1849, p. 603; Code 1869, p. 648).

In *Scott* v. *Neely*, 140 U. S. 106 (11 Sup. Ct. 712) this question, so far as the federal courts are concerned, was fully reviewed and settled that a claim purely legal involving a trial before a jury until reduced to judgment at law, could not be made the basis of relief in equity, because in those courts the right to trial by jury is secured by the seventh amendment to the constitution of the United States. See *Cattle Co.* v. *Frank*, 148 U. S. 602 (13 Sup. Ct. 691); *Tube Works Co.* v. *Ballou*, 146, U. S. 517 (13 Sup. Ct. 165); *Cates* v. *Allen*, 149 U. S. 451 (13 Sup. Ct. 883, 977).

Our statute has been used for a period of more than forty years, and has frequently been before the courts of last resort, and has never been supposed to be in conflict with the bill of rights or with article II of the constitution of 1883, or with section 13, art. III, of the constitution of 1872. See *Manufacturing Co.*, v. *Bennett*, 28 W. Va. 16.

The rules governing the general frame of bills in equity and other pleadings are based on general convenience, and are in the main the rules of all modern codes of civil procedure. The bill should state the plaintiff's case with reasonable cartainty—that is, the right he claims, the injury complained of, and the relief he seeks—with such accuracy and clearness, and with such detail of the essential circumstances of time, place, manner *etc.*, as will inform the defendant of the nature of the case, which he is called upon to meet, stating not conclusions of law but the facts out of which arises his right to some specific relief. The case intended to be made must be certain, and the allegation of the necessary material facts to make it must also be certain. See Story, Eq. Pl. (10th Ed.) §§ 239, 242. Every fact necessary to make out the case must be certainly and positively alleged, for the court pronounces its decree as based upon the allegations as well as on the evidence; but it is generally enough to state the main fact, and the circumstances which go to establish it need not be minutely charged.

"A bill must not state two inconsistent states of facts and ask relief in the alternative. But it may state the facts, and ask relief in the alternative, according to the conclusion of law which the court may draw from them; so that,

if one kind of relief sought be denied, another may be granted. And it may state facts of a different nature not inconsistent with each other and equally supporting the prayer for relief. In both these cases the bill is said to have a double aspect." 1 Fost. Fed. Pr. (2d Ed.) § 70; Story, Eq. Pl. § 246.

So, also, a bill must not be multifarious; there must no tbe a misjoinder of plaintiffs nor a misjoinder of defendants nor a misjoinder of grounds for equitable relief, held by the same parties and against the same parties. The cases on the subject of multifariousness are extremely various, and the court in deciding them seems to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule. 1 Fost. Fed. Pr. (2d Ed.) § 71 *et seq;* Story, Eq. Pl. (10th Ed.) § 271 *et seq.*

I do not regard either bill or amended bill in this case as multifarious. There is but one plaintiff, and all the defendants are parties to the trust-deed assailed as fraudulent, or lien-creditors of the trust-debtor. The claim asserted by plaintiff consists of two judgments against defendants Samuel J. Heatherly and James E. Heatherly, and two other claims against them not reduced to judgment, as to which plaintiff was but a creditor at large. The object of plaintiff's suit was to avoid as fraudulent the assignment of and charge upon the estate of the debtor Samuel J. Heatherly, created by his deed of trust on all his property dated January 31, 1889, under and by virtue of section 2, c. 133, of the Code, which reads as follows:

"A creditor before obtaining a judgment or decree for his claim may institute any suit to avoid a gift, conveyance, assignment or transfer of or charge upon the estate of his debtor, which he might institute after obtaining such judgment or decree, and he may in such suit have all the relief in respect to said estate which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover."

So that there is no misjoinder of plaintiff's grounds for equitable relief against the debtors, and all the other defendants are proper parties, the trustee as holding the legal

title, and the trust-creditors as interested in both the subject-matter and the object of the suit. They were all interested in obtaining or resisting the relief prayed for in the bill or granted in the decree complained of. Plaintiff's grounds of equitable relief are not so distinct and unconnected as to sustain separate bills. It is merely the case of one creditor with two judgments, and two claims, which are made inchoate liens upon the specific property by filing his bill to remove the deed of trust as an impediment fraudulently put by the debtor in the way of their satisfaction; and he could not maintain separate and distinct suits thereon, impeaching the deed of trust. And "to support the objection of multifariousness to a bill in equity, because the bill contains different causes of suit against the same person, two things must concur: First, the grounds of suit must be different; second, each ground must be sufficient as stated to sustain a bill." *Brown* v. *Deposit Co.,* 128 U. S. 403, 410 (9 Sup. Ct. 127.)

Is the bill inconsistent, that is, is it framed with a double aspect, praying relief in the alternative on two inconsistent cases, two inconsistent states of facts? Two answers may be made to this: First, Alternative relief is not prayed for in either original or amended bill. It simply prays that the deed of trust may be declared fraudulent and set aside as to plaintiff's claims; that the lands, or so much as may be necessary, may be sold to pay the same; and for general relief. Second:—Discovery is sought from the various defendants, and various allegations are made in order to bring out such discovery, and some of these facts alleged for that purpose are of different natures, and some perhaps inconsistent. But they are not the state of facts that go to make out plaintiff's case as the foundation for the relief prayed for; they are merely ancillary to the case alleged. For example, plaintiff alleges, that notes given for vendor's liens retained by R. T. Talbott in his sale of the tract of land of one hundred and ninety seven and a half acres to defendant Samuel J. Heatherly are apparently outstanding; that plaintiff has no means of knowing what amount of said purchase-money, if any, remains un paid, or which of defendants is entitled to receive the same. He therefore

charges that the whole has been paid, and that the lien reserved in the deed has therefore been satisfied and extinguished; so that, if the parties stand out, the bill may be taken for confessed, and delay avoided. So plaintiff charges, that it and other creditors put in order of preferment low down in the deed of trust will wholly lose their debts if the rents and profits are not sequestered and held for those ultimately entitled. I fail to see how that amounts to any inconsistency of any kind. It charges that the large debt secured to defendant Crim. high up in the deed of trust (virtually in front) is fictitious, having no real existence—good, however between parties, but not good against plaintiff; but, if a genuine debt, large assignments of bonds, notes, *etc.*, have been made to him by the debtor, or one of the debtors, enough to pay it. It prays a discovery as to this large debt secured, its postponement, *etc.*, all of which may well consist with plaintiff's case as he makes it in his bill. The cattle (one hundred head of three year olds) are granted and described in the deed of trust as embraced in an executory contract of sale, Heatherly to keep the cattle, to be delivered any time from August 20, to September 20, 1889. The deed of trust was dated and executed January 31, 1889, but the right was reserved to feed the hay, grain, *etc.*, mentioned in the deed of trust to the cattle until they were delivered—some seven or eight months. This may have been the best that could have been done, but it is not on its face so conclusively so as to justly debar plaintiff from alleging it to be otherwise, and praying for a receiver. I need not consume time as to various other objections; such for example, as that the trustee is an attorney at law, the son-in-law of defendant Crim; that as to some of the debts the debtor is but surety and that he has solvent co-sureties. Such allegations do no harm, if they do no good, as it turns out in this particular case.

The next and last ground assigned, why the demurrer to the bill should have been sustained, is that plaintiff had no ground of equitable relief except to assail the deed of trust as fraudulent, and that this is sought to be done by the simple allegation "that plaintiff charges that said deed of

trust was made by said Samuel J. Heatherly with intent to hinder, delay and defraud plaintiff and the other creditors of Samuel J. Heatherly in the collection of their said claims."

The law is well settled that a general charge of fraud is not sufficient [*Pyles* v. *Furniture Co.*, 30 W. Va. 129 (2 S. E. Rep. 909) where the charge is, "Said last-named deed of trust is fraudulent and void, and the act of making it not within the corporate purposes for which said company was formed," *etc.*] for such a naked charge of fraud would be a mere conclusion of law without any statement of circumstances or evidentiary facts, by which it could be supported, or from which it could be drawn. The bill must allege the specific acts or language, which constitute the fraud, or connect them with some specific act; for until connected with some specific act, for which one person is in law responsible to another, they have no more effect than other words of unpleasant signification. *Ambler* v. *Choteau*, 107 U. S. 586, 591 (1 Sup. Ct. 556). The particulars of the fraud must be set out (*U. S.* v. *Atherton*, 102 U. S. 372) and some injury as the result of such fraud. "It is most essential to the administration of justice in a court of equity, that the nature of the case, where it is constituted of fraud, should be most accurately and fully stated in the bill of the plaintiff. It is impossible to give relief merely on the general charge that something has been done by a party or has been obtained from a party under the influence of fraud.

It must be shown in what the fraud consists, and how it has been effected." Lord Westbury, in *Land Co.* v. *Conybeare*, 9 H. L. Cas. 711 ; 1 Bigelow, Frauds, c. 8, p. 114 *et seq;* Wait, Fraud, Conv. § 141. Fraud is the judgment of law on facts and intents. *Pettibone* v. *Stevens*, 15 Conn. 26 : *Sturtevant* v. *Ballard*, 9 Johns 342.

But this bill fully meets and fulfills the requirements of that test. It charges that the debtor, Samuel J. Heatherly, was insolvent, of which fact defendant Crim had knowledge ;—that the debt secured by the deed of trust to defendant Crim of eight thousand one hundred dollars, to which a preference was given, was fraudulent and fictitious, and that the trust-debtor was not indebted to said Crim in

any sum whatever, and that said claim was secured and preferred in said deed of trust with intent to defraud, hinder and delay the plaintiff and other creditors of the grantor, Samuel J. Heatherly, with intent to repay the same to said Heatherly for his own use and benefit;—that unless the one hundred head of cattle are sold at once, and if they are fed until September 20, 1889, as required by the trust-deed, they will without profit to the creditors consume all of the grain and other provender, worth eight hundred dollars;—and that the whole property conveyed is wholly insufficient to pay the claims charged on the property thus conveyed in trust for their payment.

In the amended bill the charge is made, that Samuel J. Heatherly was trying to borrow money for the ostensible purpose of paying debts, for which he was not then pressed, but in fact for the purpose and with the intent to place the same beyond the reach of his creditors;—and that defendant Crim with full knowledge of all the facts and circumstances set forth and well knowing, that the real purpose and intent of Heatherly was to obtain all the ready money he possibly could upon the credit of his real and personal property and thus place the same beyond the reach of his creditors, on the 31st day of January, 1889, entered into a corrupt and fraudulent agreement with the said Samuel J. Heatherly, whereby it was agreed that, if Heatherly would secure certain debts, for which Crim was responsible as his indorser, he (Crim) would let Heatherly have the further sum of six thousand five hundred dollars in cash, provided Heatherly would secure him for all said sums by deed of trust conveying all his property, real and personal, to a trustee for that purpose;—that on January 31, 1889, by deed of trust of that date this scheme was consummated and preference given the six thousand five hundred dollars paid over by Crim to Heatherly, who never used any part thereof to pay any debts, and that he never intended to use the same for that purpose, *etc.*

Whatever else the bill may lack or be deficient in, explicitness of detail of facts and intents constituting fraud in judgment of law is no part of its deficiency or lack of statement; for the facts which constitute the fraud

alleged are set out, and, if true, they make out the charge.

The second aasignment of error is that the answers of Timothy Male and others were not filed at rules or in court and therefore became no part of the record. Timothy Male and five other defendants attempted to file answers charging, that the trust was made to defraud them and other creditors, as charged in plaintiff's bill, and prayed also for affirmative relief, that the deed might be set aside for such fraud, *etc.* These defendants had their answers marked "Filed" by the clerk on the 16th day of February, 1889, which was not a rule-day, and not in term. Answers, *etc.*, except in cases of injunction, can only be filed in court or at rules. See *Goddin* v. *Vaughn*, 14 Gratt. 102, 130 ; *Hoylzlett* v. *McMillan*, 11 W. Va. 464, 478. The five answers, viz. of C. C. Martin & Co., Thompson & Jackson, Timothy Male, the Webster Wagon Company, and of Amos Whitley, should all have been treated by the court as filed at the same time, viz. at March rules, 1889, and it was error in the court to treat them as filed at any earlier date, viz. the respective dates at which they were left with the clerk to be filed.

The fourth assignment of error relates to the sustaining of exception No. 10, taken by plaintiff to defendant Crim's deposition taken on his own behalf. On the 24th day of October, 1890, plaintiff took the deposition of a witness. On the 29th day of November he gave defendant Crim his affidavit of that date, stating among other things, that on the —— day of February or March, 1889, and at a subsequent day (date not given) the suggestion was made to him by plaintiff's counsel, that, if he would guaranty to them—plaintiff and one of the defendants assailing the deed of trust—that he (witness) would testify to enough to gain this cause, they would give him (the affiant) a sum of money named, which affiant refused to accept. On the 19th day of October, 1891, defendant Crim commenced the giving of his deposition on his own behalf, which was protracted until the 28th day of October, 1891, when it was closed, and near its close on direct examination he was asked if he had had any conversation with the witness Chrislip, and in answer to that question produced the affidavit of Chris-

lip, detailing all that Chrislip said about it. To the depo-
sition of Crim, plaintiff indorsed ten several exceptions,
the tenth one being to so much of the answer of Crim on
his re-direct examination to question No. 3, *etc.*, as details
the statements made by A. G. Chrislip in regard to con-
versations pretended to have taken place between Chrislip
and plaintiff's counsel, as the same was irrelevant, incom-
petent, immaterial and not admissible, and the affidavit
and testimony of defendant Crim in introducing and filing
the same. The court overruled all the exceptions except
No. 10, which it sustained by order of November 12, 1891.

There was no error in this action of the court. It was
not proper to attempt to bring this matter into the evidence
in the cause. If defendant supposed there was any foun-
dation for the charge of an attempt to tamper with the
witness, it should have been brought to the attention of the
court in some one of several proper modes. It can only
be excused on the ground that the suit seems to have
developed a great deal of bitterness between some of those
connected with it and defendant Crim. What steps, if any,
the court took to have the charge investigated does not
appear.

Appellants' assignment of error No. 5, is that it was
error to hear the cause before it was matured at rules, and
to dismiss the cause as to defendants, C. J. and H. L. Roy.
H. L. Roy was examined as a witness for plaintiff, and the
record shows that Pickens was served with process, but
that neither of the Roys ever appeared or were served with
the writ of summons. All three were made parties to the
original bill and served with process, but neither ever en-
tered any appearance at any time.

There was a written contract dated October 1, 1888, by
which Pickens sold and delivered to defendant, Samuel J.
Heatherly, one hundred head of two year old cattle, for
which Heatherly was to pay Pickens three and one half
cents per pound when weighed at the scales, and Heatherly
paid down on the cattle one thousand and fifty seven dol-
lars and fifty cents. By this contract, Heatherly agreed to
keep the said cattle until the 20th day of August, 1889, at
which time, or, rather, say at any time between August 20

and September 20, 1889, Pickens agreed and bound him-self to buy said cattle back again at four and one fourth cents per pound payable at the scales in cash, when weighed. It was signed by both parties, and afterwards signed by the two Roys, who state in writing in the contract above their names, that they together were a half partner with Dever Pickens in the said within contract, and thereby ratified the said contract to the extent of one half of said Pickens's liability therein. The trustee in the deed of trust, M. Peck, to whom the cattle were conveyed and transferred, was directed to feed and keep these cattle and carry out and fulfill this contract on the part of Heatherly, for the benefit of his creditors thereby secured; and this contract and the recital thereof and direction thereby given in the deed of trust are stated and alleged in plaintiff's original bill. There is no allegation on the subject in the amended bill. Pickens is not, but the two Roys are, made parties defendant to the amended bill. The evidence tends to show that this one hundred head of cattle were worth at the contract price, at the day of deliver, about six thous-and dollars. They were an important part of the subject-matter of the suit. Pickens and the two Roys were inter-ested therein, with nothing to show that they had ever re-linquished such interest. They were proper parties in plaintiff's case as made by his pleadings and in the relief sought and the order of sale entered by the court and in the proceeds. The cause should have been matured as to them; at any rate, it should not in the interest of the other defendants have been dismissed by plaintiff, as was done as to defendants Pickens and the two Roys.

The trustee, M. Peck, under the order of the court sold these cattle for cash on the 3d day of October, 1889, at three dollars and seventeen cents per one hundred pounds, to defendant Crim, for four thousand two hundred and seventy dollars and thirty cents, and the purchase-money seems to be in court to the credit of the cause. They were interested in the cattle; are interested in the proceeds of sale, in the decision made or to be made, which ought to have provided for and settled their claims or rights, if any, in the matters decided; and, as these proceedings mani-

festly affect their rights and claims, they should have been
retained as parties, so that they would have been bound by
the orders and decrees of the court in that behalf, and the
matters of conflicting claims settled completely and not
left half done.   I would conjecture that they were willing
to relinquish all claims under their contract; but it should
not be left to conjecture, but should have been settled one
way or the other by the estoppel, that would have resulted
from simply retaining them as parties.   I do not know that
putting them back would now answer any useful purpose.
I infer not.   It has passed that point.   The low price at
which the cattle sold, compared with what they were to
give, has worked a practical settlement.

Assignments Nos. 6 and 7, are that no sale should have
been decreed and made *pendente lite* without ascertainment
of the "valid liens" against the property "admittedly" older
than those decreed, or to disburse the surplus proceeds of
sale of the tract of land of one hundred and ninety seven
and one half acres, called in the deed of trust the "Talbott
Tract," which appears from allusions made to it in testi-
mony to have been sold in some suit brought to enforce the
vendor's lien, and still pending.

That suit ought to have been heard with this one, or
have been referred to in some way, so that it could have
been looked into, if necessary; and the decree complained
of, and this record, show that such looking into was nec-
essary in the court below, and, as the case stands, if affirmed,
would be necessary here.   The record shows that J. Hop
Woods and J. M. Kirk had attached this one hundred and
ninety seven and one half acres before it was conveyed by
the deed of trust; that it had been sold to enforce payment
of some balance of purchase-money, secured by vendor's
lien reserved, in some suit in the name of J. W. Proudfoot,
still pending.   All this certainly appears from something
incidentally let fall by one or more of the witnesses but
vaguely and obscurely, as to what the court must know
definitely and clearly before making it the subject of a de
cree in this an independent suit against this land, as one of
the tracts embraced in the deed of trust herein assailed for
fraudulent preference given.   And, more than that, this

decree proceeds on the theory that there is a surplus in court to the credit of the Proudfoot suit after satisfying the plaintiff's vendor's lien. This surplus, if any (which I take to be doubtful from what is said about it by the witness) is still real estate, so far at least as the enforcement of specific liens against it before sale are concerned. See *Pickens* v. *Kniseley,* 36 W. Va. 794 (15 S. E. Rep. 997); *Fowler* v. *Lewis,* 36 W. Va. 150 (14 S. E. Rep. 447); 3 Pom. Eq. Jur. § 1167.

The decree of December 23, 1892, appealed from is as follows:

"And the court, having maturely considered the pleadings and proofs in these causes, is of opinion that the deed of trust executed by Samuel J. Heatherly to Melville Peck, trustee, on the 31st day of January, 1889, was made by the said Heatherly with intent to delay, hinder, and defraud his creditors, and especially the plaintiff in said first-named cause, and the several defendants, C. C. Martin & Co., Thompson & Jackson, Timothy Male, Webster Wagon Co., and Amos Whitley, in the collection of their several demands against him, and the petitioner, James A. Williamson, in the collection of his debt of one hundred and fifty three dollars and fifty two cents, with interest from the 18th day of February, 1889, and two dollars and eighty-five cents against him, mentioned in his said petition No. 1, and that the said Melville Peck, trustee, had notice of said fraudulent intent of Samuel J. Heatherly. It is therefore adjudged, ordered, and decreed that the said deed of trust dated January 31, 1889, executed by Samuel J. Heatherly to Melville Peck, trustee, as to the several debts due from Samuel J. Heatherly to the plaintiff, the Zell Guano Co., and to the several defendants, C. C. Martin & Co., Thompson & Jackson, Timothy Male, Amos Whitley, Webster Wagon Co., and as to the debt of one hundred and fifty three dollars and fifty two cents due to the petitioner, James A. Williamson, is fraudulent and void; but nothing herein contained shall in any manner impair the force, effect, or priority of any valid lien against the real estate of Samuel J. Heatherly which existed on or before January 31, 1889, in favor of any of the parties to these

causes, or which may have been since acquired by any of them; and all such rights not extinguished, and all remedies to enforce the same, are reserved to such parties, respectively. And it appearing to the satisfaction of the court from the pleadings and proofs herein that the defendant Samuel J. Heatherly, on the 31st day of January, 1889, was indebted as follows: To the Zell Guano Co., one thousand two hundred and twenty one dollars and eighty two cents, amounting, on the 13th day of October, 1892, including interest and six dollars costs, to the sum of one thousand four hundred and ninety six dollars and five cents; to the defendant C. C. Martin & Co., three hundred and forty two dollars and ninety five cents, with interest from the 7th of November, 1888, amounting, on the 13th of October, 1892, to four hundred and twenty two dollars and ninety five cents; to Thompson and Jackson, one thousand and forty four dollars and twenty seven cents; amounting, on the 31st of October, 1892, including interest and twenty four dollars and seventy cents costs, to one thousand three hundred and sixteen dollars and fifty seven cents; to Timothy Male, forty nine dollars and fifty cents with interest from February 11, 1889, and two dollars and forty cents costs, amounting, on the 13th of October, 1892, to sixty two dollars and eighty cents; to Webster Wagon Co., two thousand two hundred and twelve dollars and sixteen cents, amounting, on the 31st of October, 1892, including interest, to two thousand six hundred and sixty seven dollars and two cents; to Amos Whitley, one thousand eight hundred and twenty dollars and fifteen cents, amounting, on the 31st of October, 1892, to two thousand two hundred and thirteen dollars and ninety seven cents; to James A. Williamson, his said debt, amounting, on the 31st of October, 1892, to one hundred and ninety dollars—all of which remains unpaid—it is further adjudged, ordered, and decreed that the defendant Samuel J. Heatherly do pay to the plaintiff, the Zell Guano Company, the sum of one thousand four hundred and ninety six dollars and five cents; to the defendant C. C. Martin & Co., four hundred and twenty two dollars and ninety five cents; to Thompson & Jackson, one thousand three hundred and sixteen dollars and

fifty seven cents; to Timothy Male, sixty two dollars and eighty cents; to Webster Wagon Co., two thousand six hundred and sixty seven dollars and two cents; to Amos Whitley, two thousand two hundred and thirteen dollars and ninety seven cents; and to practitioner, James A. Williamson, one hundred and ninety dollars—with interest upon each of said several amounts from the 31st day of October, 1892, until paid. And the court being further of the opinion that the plaintiff in said first-named cause, by the institution of its suit on the 2nd day of February, 1889; and the several defendants—C. C. Martin & Co., by the filing of their answer on the 6th day of February, 1889; Thompson & Jackson, by the filing of their answer on the 12th day of February, 1889; Timothy Male, by the filing of his answer on the 16th day of February, 1889; Webster Wagon Co., by the filing of its answer on the 18th day of February, 1889; Amos Whitley, by the filing of his answer on the 23d day of February, 1889; and the said Williamson, by the filing of his petition No. 1 on the 7th day of September, 1891—severally acquired liens upon the real and personal property of the said Samuel J. Heatherly in said deed of trust, and upon the proceeds of the sale thereof, mentioned in the report of said special commissioner, Peck, for the amounts of their several debts, in the following order of priority, that is to say: First, Zell Guano Company, for one thousand four hundred and ninety six dollars and five cents, as of the 2d day of February, 1889; second, C. C. Martin & Company, for four hundred and twenty two dollars and ninety five cents, as of the 6th day of February, 1889; third, Thompson & Jackson, for one thousand three hundred and sixteen dollars and fifty seven cents, as of the 12th day of February, 1889; fourth, Timothy Male, for sixty two dollars and eighty cents, as of the 16th day of February, 1889; fifth, Webster Wagon Company, for two thousand six hundred and sixty seven dollars and two cents, as of the 18th day of February, 1889; sixth, Amos Whitley, for two thousand two hundred and thirteen dollars and ninety seven cents, as of the 23d day of February, 1889; seventh, James A. Williamson, for one hundred and ninety dollars, as of the 7th of September, 1891—it is further

adjudged, ordered, and decreed that out of the residue, if any, of the proceeds of the sale of the tract of one hundred and ninety seven and a half acres of land, conveyed to said Samuel J. Heatherly by Richard T. Talbott, remaining after satisfying to him or his assignees, F. M. Durbin, Isaac W. Proudfoot, and Martin E. Lawson, the unpaid purchase money on said tract of land, and the proceeds of the sale of said personal and other real property of the defendant Samuel J. Heatherly in said deed of trust mentioned, there shall be paid to the last-named creditors of Samuel J. Heatherly, in the order of priority above declared, the several amounts above ascertained to be due them, respectively, with interest from the 31st of October, 1892, together with the plaintiff's costs in said first-named cause, and the costs of said several defendants, C. C. Martin & Co., Thompson & Jackson, Timothy Male, Webster Wagon Company, and petitioner, Jas. A. Williamson, upon his petition No. 1; and that, until the same be fully paid, no part of the proceeds of the sale of said personal and real property of said Samuel J. Heatherly shall be applied to the satisfaction of any of his other debts mentioned in said deed of trust. And the court being further of the opinion that, from the want of proper parties to the petition No. 1 of said James A. Williamson, the questions arising on the face thereof in regard to the relief therein prayed for against the said Samuel J. Heatherly as a cosurety with him on the official bond of James E. Heatherly, as late sheriff of Barbour county, can not be properly determined, all rights of said Williamson in respect thereto are reserved to him, and he hath leave to amend his said petition, and to make additional parties thereto. And the court not having before it sufficient facts to determine whether any, and, if any, what liens existed against the real estate of Samuel J. Heatherly before the execution of the said deed of trust, or the character, amounts, or priorities thereof, or to which lands the same attach, it declines for the present to direct the sale of any of said lands. And it further appearing to the court, from the report of Special Commissioner Melville Peck that he sold the personal property mentioned in the deed of trust on the 3d day of October, 1889, for the sum of four

thousand eight hundred and ninety dollars and twenty five cents, of which, on that day, he received in cash four thousand four hundred and nine dollars and twenty five cents, and four hundred and eighty one dollars in notes bearing interest from that day; that he paid out for expenses attending said sale seventeen dollars and twenty five cents; and that his lawful commission for making said sale, and for collecting and disbursing the proceeds thereof amount to the sum of one hundred and six dollars and eighty one cents—it is ordered that the said report and sale be confirmed, and that said Peck be allowed to retain said two sums out of the proceeds of said sale as of the date thereof. And the court having ordered the said commissioner, out of said proceeds, to pay James A. Williamson, sheriff, the sum of three hundred and fifty one dollars and seventy four cents on the ————— of October, 1889, and to John Shank, sheriff, three hundred and twenty six dollars and fifty five cents on the 22d day or May, 1891, on account of taxes due from the defendant S. J. Heatherly, upon the real and personal property in said deed of trust mentioned, which sums have been paid by said commissioner Peck, it is further adjudged, ordered, and decreed that said Peck be allowed, upon said proceeds, further credits as follows : For said three hundred and fifty one dollars and seventy four cents so paid Williamson, as of October 3, 1889, and for said three hundred and twenty six dollars and fifty five cents paid Shank, as of May 22, 1891. And the court, with the assent of Commissioner Peck that there is remaining in his hands, out of the proceeds of said sale, including interest accrued thereon to the 22d day of December, 1892, the sum of four thousand nine hundred and twenty dollars and one cent, applicable to the payment of the amounts hereinbefore decreed to be paid, it is further adjudged, ordered, and decreed that the said Special Commissioner Peck, out of the moneys in his hands, do pay, first, to the Zell Guano Company, its costs herein incurred up to this date, and then pay to said Zell Guano Company, C. C. Martin & Company, Thompson & Jackson, and Timothy Male the several debts hereinbefore decreed to them, respectively, with interest thereon from the 31st day of October, 1892, until paid, in

the order of priority hereinbefore declared, and their costs, and the residue of said four thousand eight hundred and eighty eight dollars and eighty five cents, amounting to $——, with interest upon said residue as aforesaid, to the Webster Wagon Company, in part satisfaction of the debt hereinbefore decreed to be paid to them. All other questions touching the amounts, validity, and priority of the several debts claimed to be due the other defendants, and touching their rights to participate in the proceeds of the real estate of said Samuel J. Heatherly in the deed of trust mentioned, after the satisfaction of the several debts hereinbefore provided for, are reserved for such future orders and decrees as may be proper to be made herein."

In the case of *Johns* v. *James*, 8 Ch'y Div. 744, following *Garrard* v. *Lauderdale*, 3 Sim. 1, it was held, that a trust-deed, by which property is conveyed for the benefit of creditors does not of itself create a trust for any of the creditors, but an assignment that was a mere revocable and controllable private arrangement for the convenience of the debtor, and that there was no trust for the benefit of the creditors; it was a mere revocable mandate, unless the creditor has himself executed the deed—has been a party to it, and assented to it. See *Johns* v. *James*, Brett. Lead. Cas. Eq. 21, 23, and notes; Lew. Trusts (1st Amer. Ed., by Flint, from 8th Eng. Ed.) c. 20, top page 509 *et seq.*, and notes. And this would be true in this state in such a conveyance to secure debts generally, to which no trustee or creditor is a party; but if it has been sanctioned by previous assent or subsequent ratification, although by subsequent assent or ratification, by act *in pais,* by trustee or *cestui que trust,* before the rights of other parties attach, it becomes irrevocably binding. *Skipwith* v. *Cunningham,* (1837) 8 Leigh, 271, since followed. See *Spencer* v. *Ford* (1843) 1 Rob. (Va.) 648; 1 Bart. Ch'y Pr. 102.

Deeds of trust have been the favorite mode of securing debts and creating specific liens, and have long been recognized and regarded to some extent by statute; and, although not recommended by the revisers, the legislature caused sections 5, 6, c. 117, of the Code of 1849 (now sections 5–8, c. 72, Code W. Va.—see Ed. 1891, p. 638) to be inserted—

a provision that has been in constant use for more than forty years. And when for any proper cause a court of equity is called upon to take control of the trust-property, the general rule is to go on and have the trustee execute and administer the trusts under its direction and with its sanction, especially where the court having taken control properly sets it aside in part and lets it stand good as to the residue; the general rule being that, where a decree is entered which manifestly affects the rights and remedies of all the trust-creditors, the court goes on and provides for the rights of all the trust-creditors in the matter decided, and others having prior specific liens on the property to be sold, ascertaining and arranging such liens not by piece-meal but by decrees ascertaining the rights of all and doing complete justice to all according to their respective rights before selling the property, or before distributing the proceeds, if a sale has been made, as is sometimes proper in advance of such ascertainment.

This mode of proceeding as to judgment liens is required, and the mode prescribed, by section 7, c. 139, of the Code. (See Ed. 1891, p. 882.) So that it was error to distribute in this case any surplus fund left over from the sale of the tract of land of one hundred and ninety seven and a half acres—the Talbott tract—at this stage of the cause, when there is nothing in the record to show the amount of such surplus, how it arose, or where it is, or really who is entitled to it.

Assignment No. 8. That it was error to decree payment of the claim of defendant Timothy Male because the record shows it paid. Male was examined as a witness, and his evidence does not show it paid, but assigned by him to defendant A. S. Poling.

Assignment No. 9 has already been considered. The court should go on and ascertain the facts necessary to fix and classify the liens, and determine who are entitled to participate in the proceeds of the sale of the lands, and in what order, and to what extent.

Assignment No. 10 is based on the contention that the decree complained of sets aside the trust deed *in toto* in favor of plaintiff and other impeaching creditors, although

but one of the many debts secured is in any way assailed. This contention is not well founded, except as matter of inference. The decree itself has no such effect by the language used, but may have such meaning and ultimate effect by necessary implication. It reads as follows: "It is adjudged, ordered, and decreed that the said deed of trust, * * * as to the several debts due from Samuel J. Heatherly to the plaintiff, the Zell Guano Co., and to the several defendants, C. C. Martin & Co. (naming the others) is fraudulent and void." Nor does its language anywhere, as far as I can discover, justify any other interpretation than the one which restricts the invalidity expressly pronounced to its effect on the claims of the creditors specifically named, leaving the others in full force and effect, except as to what may follow as the result of the opinion of the court that "Melville Peck, trustee, had notice of the fraudulent intent of Samuel J. Heatherly, the trust debtor." So important a matter should not have been left in such a state of doubt, leaving the rights of the other creditors unsettled and in confusion.

The deed of trust assailed as fraudulent in this suit was executed on the 31st day of January, 1889, by defendant Samuel J. Heatherly, by which he conveyed to defendant Melville Peck, trustee, all his property, real and personal, to secure and pay all his debts, divided into eight classes, with priority given in the order in which they are numbered: (1) Taxes, *etc.,* outstanding against the grantor, Samuel J. Heatherly: (2) certain holders of vendors' liens on a tract of land called the "Talbott Tract," containing one hundred and ninety seven and a half acres; (3) Joseph N. B. Crim, the sum of eight thousand and one hundred dollars; (4) a debt to Leonard Mallonee; (5) a debt due the First National Bank of Grafton; (6) to George W. Dickinson and various other creditors, naming them; (7) to Aldine S. Poling, three hundred dollars, *etc.;* (8) and, last, the claim of plaintiff and the other impeaching creditors, and all his other creditors. The personal property was worth about five thousand dollars, and the land about twelve thousand dollars or fifteen thousand dollars. Defendant Samuel J. Heatherly had become very much involved

in debt as surety or indorser for his son. He had his liabilities and his own debts listed, as far as he could, and posted up, and found that all his property would not pay them. He then set about trying to borrow five thousand dollars or six thousand dollars by giving a deed of trust on his land for the purpose of putting that much out of the reach of his creditors. J. N. B. Crim had a list of these debts, and knew that Samuel J. Heatherly was broken up, not having property enough to pay these debts against him, yet he loaned him six thousand five hundred dollars in money, part of the eight thousand and one hundred dollars, and had the deed of trust executed, as already mentioned. The loan was fictitious, being only intended to help defendant Heatherly to put that much of his property beyond the reach of his creditors, the identical money in the same packages (except four hundred and seventy five dollars) being returned to defendant Crim on the 8th day of January, 1891. He contemplated, when. it was loaned, that some of it should be used by Heatherly in satisfying certain liens against the property embraced in the deed of trust, but for some reason this purpose was not carried out; perhaps because, before all the money loaned was paid over to defendant Heatherly, this suit assailing the deed of trust was instituted.

This brings me to what I regard as the turning point in the case : Can this Court say, as the Circuit Court has said, that the trustee had notice of the grantor's fraudulent intent, and, if so, what is the effect? It has long been the settled law of this state that the trustee and creditors in such a deed of trust are purchasers, and not creditors, under the statute against fraudulent conveyances, and that it is not necessary to the validity of a deed of trust that it should be executed by the *cestui que trust*—the creditor secured. The deed operates to pass the legal title as soon as executed by the grantor and the trustee, and can only be avoided by the dissent, express or implied, of the *cestui que trust, Skipwith* v. *Cunningham* (1837) 8 Leigh, 271. This is based on the presumption that it is beneficial, and being beneficial is acquiesced in, until in some way renounced, and hence the assent of the grantee is implied in all conveyances

—First, because of the supposed benefit; secondly, because it is incongruous and absurd that, when a conveyance is completely executed on the grantor's part, the estate should continue in him; thirdly, to prevent the uncertainty of the freehold. *Id.* 282.

In this case the trustee executed the deed of trust, and thereby affirmatively accepted it, and, the legal title being vested in him, a trust arose in behalf of the creditors in whose favor it was declared, and such trust is irrevocable, and so continues until disavowed or disclaimed by the *cestui que trust.* Seven of the creditors, including the plaintiff, soon expressed their dissent, disclaiming to take under the trust deed, and uniting with the plaintiff in assailing it, and and in their favor the decree complained of was entered. Six of the creditors claiming under the deed insist that it is valid, and they, together with the trustee and trust-debtor, make up the eight appellants.

There can be no reasonable doubt that the deed was executed with the intent to hinder, delay, or defraud the grantor's creditors. Did the trustee participate in it? or have notice of it? When the deed of trust was completed, after dark the bank was closed, and the money loaned was not paid until the next day, five thousand one hundred and forty five dollars and the residue, one thousand three hundred and fifty five dollars on the 4th of February, by check. What there can be about the time of payment, as compared with the precise time when the deed of trust was executed and recorded, that could possibly be construed as untrue in any practical, substantial sense, or as affecting the question of fraudulent intent, I am wholly unable to see. It was contemporaneous with the making of the deed, for all practical purposes, just as it was intended to be. I can see no harm in doing it in that way, and certainly no inculpating significance in the trustee knowing that it was thus done. He was the son-in-law, and to some extent the legal adviser, of defendant Crim. Neithe relation disqualified him from being made the trustee. Such relationship is no badge of fraud; at least, it could only be a circumstance which might, in connection with other things, indicate one in whom secret confidence might be reposed by one of the trust-creditors, but not by the trust-debtor.

Mr. Peck answers both the original bill and the amended bill fully, upon all points calling for answer from him : That the transaction, as for as he had anything to do with it himself, or had any knowledge of the intent and purpose of the grantor, or of any creditor secured, was perfectly *bona fide*, without any desire or intention on their part to hinder, delay, or defraud plaintiff or any other person ; that he is a purchaser for valuable consideration of the trust-property, without notice or knowledge of any fraud or fraudulent intent on the part of any one ; that he wrote the deed of trust ; that up to that time he had no knowledge of either the property or the debts of defendant Samuel J. Heatherly, or his son, James E. Heatherly, or that he was insolvent; that he believed defendant Samuel J. Heatherly to have been solvent, and on December 10, 1888, believed and supposed him to be worth thirty five thousand dollars or forty thousand dollars above all his own debts and those for which he was liable for others.  His deposition was taken, and he testifies to the same facts, and that he had not a particle of interest in any debt secured, direct or indirect, as far as he knew, nor any notice or information, of any kind or character, that any one was attempting or intending to commit any fraud about the execution of the deed of trust; and I have searched this record through and through carefully, without being able to find any fact or circumstance fairly tending, in any degree, to bring home to him any notice of or participation in the fraud or fraudulent purpose of the trust-debtor.

Therefore, it was error in the Circuit Court to hold, as it did, in the decree complained of, "that the said Melville Peck, trustee, had notice of the fraudulent intent of Samuel J. Heatherly."  Although it was right in holding that the deed of trust was executed by the grantor with the intent to hinder, delay, and defraud plaintiff and the other creditors, who impeach its validity, so far as it is made to secure the debt of eight thousand and one hundred dollars it is not and would not be, right on the facts disclosed by this record to hold inferentially such deed voidable as to any of the other trust-creditors named therein, for the reason that there is no evidence tending in the slightest

degree to show that any of such other claims are fictitious, or in any way fraudulent or otherwise invalid, or that such other creditors, personally, or by their agent, the trustee, participated in or had notice of the fraudulent intent or contrivance of the grantor, but, so far as appears, they are honest debts, entitled to be paid, as provided for in the deed of trust.

The debt of eight thousand and one hundred dollars, designated as "No. 3" in the order of payment mentioned in the deed of trust, should be remitted to the foot, and placed in a new class, "No. 8" to be paid last in the order of priority, but plaintiff and other creditors, whose claims were decreed them in the decree complained of, must hold their place assigned them, and have no right to be called up to No. 3, or to occupy the place made vacant by the removal therefrom of the claim of eight thousand and one hundred dollars, but such vacancy is to be filled by closing up those in the rear in the order named; for, although the rule in this state is that his diligence is to be rewarded who has enlarged the fund to be distributed by removing some fraudulent contrivance that concealed it, yet the qualification of the rule is as well settled as the rule itself, that he can not displace or impair any prior, valid, subsisting lien, and this has been held to be a proper qualification of the rule on principle.

Here, the good faith of these claims was attacked by charging and attempting to bring home to the holders thereof, in the person of their agent, the trustee, notice of, if not other participation in, the fraud of the grantor; but they have successfully withstood such charge, and their claims still stand as just and honest ones, as prior liens upon the fund as a whole, still subsisting, and not to be debarred of any increase of share incident to their right to hold the place assigned them.

These lienors are without fault, with claims without taint, with equal equity, and a legal right. Why should they be put aside or superseded in the order of priority against the fund as a whole, which the deed of trust has given them? But this the court does by its decree, and for such error appellants have also just ground for complaint. See *Hard-*

*castle* v. *Fisher*, 24 Mo. 70, and *Cohn* v. *Ward*, 36 W. Va. 516 (15 S. E. Rep. 140) where the qualification of the rule is discussed, and vindicated, I think, on principle, as well as on authority, although upon the question there is some conflict.

For these errors the decree complained of must be reversed, and the cause remanded for the claims and liens to be ascertained and put in their proper order of priority, and the trust-property or fund ascertained and administered under the direction and control of the court.